## MILLS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   June 6, 1921.   Rehearing Denied August 1, 1921.)

No. 3595.

1. **Aliens ⊕59—In prosecution for attempting to re-enter after deportation, reference in warrant of deportation to wrong statute is immaterial.**

In a prosecution under Immigration Act Feb. 5, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼bb), for attempting to enter the United States after having been arrested and deported therefrom, it was immaterial that the warrant of deportation, dated before the act of 1917 went into effect, purported to be based on such act, as the previous Act Feb. 20, 1907, as amended by Act March 26, 1910, contained the same provision.

2. **Aliens ⊕56—Statute as to attempt to re-enter after deportation not limited to re-entry within one year.**

Act Feb. 5, 1917 § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼bb), providing that an alien deported under the provisions of that act relating to prostitutes, etc., and thereafter attempting to return or enter the United States, shall be guilty of a misdemeanor, applies to an attempt to re-enter more than one year after the deportation, though another provision of the act includes in the persons denied admission persons deported and again seeking admission within one year without the consent of the Secretary of Labor.

3. **Aliens ⊕56—Statute punishing attempt to re-enter after deportation not ineffective.**

Act Feb. 5, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼bb), making it a misdemeanor for certain aliens, after being deported, to attempt to return to or enter the United States, is not ineffective as penalizing an attempt to do an act which is not in itself a crime, as the attempt is expressly made punishable, and is in itself a substantive offense, and not a mere attempt to commit another offense.

4. **Criminal law ⊕695(4)—Admission of evidence not error, when objection on particular ground not made.**

On the trial of an alien for attempting to enter the United States after being deported, the admission of a Canadian certificate of naturalization to show that her husband was an alien, without proof of the authority of the Canadian court issuing it, was not error, where such objection was not interposed to its admission.

5. **Criminal law ⊕315—Foreign citizenship presumed to continue until countershowing made.**

On the trial of an alien for attempting to enter the United States after being deported, where her Canadian citizenship was shown to exist on November 15, 1911, the presumption continued until a showing was made to the contrary.

6. **Aliens ⊕59—Canadian naturalization certificate held to show prima facie Canadian citizenship.**

On the trial of an alleged alien for attempting to enter the United States after being deported, a certificate of naturalization granted by a Canadian court under Revised Statutes of Canada, and certifying that defendant's husband had been naturalized as a British subject, was sufficient to show prima facie that at the date thereof he was a citizen of the Dominion of Canada.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Elsie Mills was convicted of returning to the United States after deportation, and she brings error. Affirmed.

Beeler & Sullivan and C. A. Brinkley, all of Seattle, Wash., for plaintiff in error.

Robert C. Saunders, U. S. Atty., and George E. Mathieu, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was convicted and sentenced under an indictment which charged that on January 18, 1920, she knowingly, willfully, and unlawfully attempted to return and enter the United States from foreign territory contiguous thereto, to wit, the Dominion of Canada; the Secretary of Labor not theretofore having consented to any reapplication by her for admission into the United States, she having been theretofore, on July 29, 1917, arrested and deported from the United States of America to the Dominion of Canada, on the charge that she had been found in the United States, connected with the management of a house of prostitution in the United States, and the arrest and deportation having been made by virtue of a warrant issued March 13, 1917, by the Department of Labor. The warrant was set forth in full, and it recited, among other things, that the plaintiff in error was found in the United States in violation of the Immigration Act of February 5, 1917 (39 Stat. 874).

[1] Error is assigned to the order overruling the demurrer to the indictment, and it is contended that the indictment fails to charge an offense, in that the warrant of deportation therein set forth, which was dated March 13, 1917, was expressly based upon the Immigration Act of February 5, 1917, an act which went into effect on May 1, 1917, and was not in force at the date of the warrant. The previous Act of February 20, 1907 (34 Stat. 898), as amended in 1910 (36 Stat. 264), was in force, however, and the provisions of that law as amended are identical with the provisions of the Act of February 5, 1917, so far as they concern the charge against the plaintiff in error.

A similar contention was presented to this court in Akira Ono v. United States (C. C. A.) 267 Fed. 359, where the order of the Secretary of Labor, directing the arrest of a Japanese person and ordering that he be granted a hearing to show cause why he should not be deported, recited that he had entered the United States in violation of the Act of February 5, 1917, although the entry occurred before the passage of the act, this court held that the erroneous mention of the statute of February 5, 1917, was unimportant, for the reason that the real question was whether the case showed that the appellant was found illegally here, and, if so, whether there existed legal authority for his deportation. In Guiney v. Bonham (C. C. A.) 261 Fed. 582, 8 A. L. R. 1282, we held that, although a warrant of arrest for deportation is in terms based on a particular statute, the alien may be deported under a later statute, which, under the facts charged, is applicable. Other cases of like import are United States v. Uhl, 211 Fed. 628, 128 C. C. A. 560, United States v. Williams, 200 Fed. 538, 118 C. C. A.

632, Healy v. Backus, 221 Fed. 358, 137 C. C. A. 166, Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501, and Ex parte Pouliot (D. C.) 196 Fed. 437.

[2] The plaintiff in error refers to the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), which provides for the denial of admission to the United States of all "persons who have been deported under any of the provisions" thereof, "and who may again seek admission within one year from the date of such deportation, unless prior to their re-embarkation at the foreign port or their attempt to be admitted from foreign contiguous territory, the Secretary of Labor shall have consented to their reapplying for admission," and contends that by implication it follows that a deported alien has the right to re-enter the United States after the expiration of the one-year period. We find no merit in the proposition. Section 4 of the act (section 4289¼bb) provides in plain terms that any alien who shall, after he has been excluded and deported, or arrested and deported, in pursuance of the provisions of this act, which relate to prostitutes, procurers, or other like immoral persons, attempt thereafter to return to or enter the United States, shall be deemed guilty of misdemeanor.

[3] Nor do we find merit in the contention that no offense against the United States is defined by the statute under which the plaintiff in error was indicted. The argument is that an indictment which alleges an attempt to return to and enter the United States, an act which is not in itself a crime, cannot be made a crime, citing 8 R. C. L. 352, where it was said:

"For it would appear to be a palpable solecism in the law to declare that a mere attempt to commit an act which is not penal is itself punishable."

Counsel for the plaintiff in error overlook the words which immediately precede the quotation, which are these:

"In the absence of a statute expressly making an attempt to commit suicide a crime, there is no satisfactory ground on which it can be classed as such."

In the present case the statute expressly makes the attempt a punishable offense. The attempt is in itself a substantive offense. It is the act of crossing the boundary line into the United States. It is not an attempt to commit an independently described offense, in the sense in which the word "attempt" is ordinarily used, in criminal law. It is the actual re-entry into the United States.

[4-6] The plaintiff in error was born in the United States, but she went to Canada with her husband, and there resided before returning to the United States and to the place in Montana from which she was ordered to be deported to Canada, on the charge that she was an alien and a keeper of a house of prostitution in the United States. Her husband, L. L. Mills, had likewise been a citizen of the United States, but to show that on November 15, 1911, he became a naturalized citizen of the Dominion of Canada, the prosecution offered in evidence on the trial a certificate of naturalization, wherein, under the provisions of the Revised Statutes of Canada of 1906, it was certified that L. L. Mills had become naturalized as a British subject, "and is within Canada

entitled to all political and other rights, powers, and privileges, and is subject to all obligations to which a natural-born British subject is entitled or subject within Canada."

It is contended that the certificate was insufficient to prove such naturalization of L. L. Mills, for the reason there was no proof that the British Parliament had conferred upon the Canadian court which issued the same the power to make L. L. Mills a British subject. But no such objection was interposed to the admission of the certificate in evidence. The only objection was that there was absence of proof to show that the certificate was still in effect. The trial court overruled the objection, holding that, the Canadian citizenship being shown to exist on November 15, 1911, the presumption would be that it continued until showing was made to the contrary.

There was no showing to the contrary, and we think the ruling of the court was clearly correct, and that the certificate was sufficient to show prima facie that L. L. Mills was at the date thereof a citizen of the Dominion of Canada.

There was further proof of such citizenship in the admission of L. L. Mills to a witness in the case that he was a Canadian citizen, and in the evidence that on his attempting to enter the United States from Canada in November, 1917, he was denied admission. It was also shown that in the hearing before the United States immigration inspector at Seattle, Wash., a few days before the plaintiff in error was indicted, an affidavit of L. L. Mills was filed in which he stated that in the year 1911 he took out Canadian citizenship papers for the purpose of enabling him to vote as a property owner there, and to give him protection while in Canada; his understanding being, however, that the papers would automatically become invalid on his returning to the United States.

We find no error for which the judgment should be reversed. It is accordingly affirmed.