**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Donato CORRALES–BELTRAN, Defendant–Appellant.**

No. 98–50595.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1999.

Decided Oct. 6, 1999.

Benjamin L. Coleman, Federal Public Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Jonah H. Goldstein and Sam T. Liccardo, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

Before: BRUNETTI, WARDLAW, Circuit Judges, and SEDWICK,[1] District Judge.

WARDLAW, Circuit Judge:

We are asked to review a collateral challenge to a prior deportation order and to determine the applicable sentencing guideline for a violation of 8 U.S.C. § 1326(a). Jose Donato Corrales–Beltran was convicted of attempting to reenter the United States after being deported in violation of 8 U.S.C. § 1326(a). The district court denied his motion to dismiss the indictment, ruling that the Immigration Judge's failure to advise Corrales–Beltran of his right to appeal the bail amount did not render his prior 1991 deportation order constitutionally defective. Corrales–Beltran appeals this denial and challenges the district court's application of United States Sentencing Guideline ("U.S.S.G.") § 2L1.2 to his conviction, arguing that because he failed in his attempt to enter, the district court should have sentenced him under U.S.S.G. § 2X1.1, the guideline for attempt crimes. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

I.

We review *de novo* Corrales–Beltran's claim that defects in the underlying deportation procedure invalidated the proceeding for use in his criminal proceedings. *See United States v. Leon–Leon*, 35 F.3d 1428, 1430 (9th Cir.1994) (citing *United States v. Proa–Tovar*, 975 F.2d 592, 594 (9th Cir.1992) (en banc)). We also review *de novo* the district court's interpretation of the Sentencing Guidelines. *See United States v. Fuentes–Barahona*, 111 F.3d 651, 652 (9th Cir.1997).

II.

On March 27, 1991, Corrales–Beltran appeared before an Immigration Judge in deportation proceedings. The Immigration Judge reset the deportation hearing after Corrales–Beltran stated that he wished to procure the services of a lawyer. Before the hearing was adjourned, Corrales–Beltran inquired of the Immigration Judge as to his bail status, and was told that bail was set at $15,000. The deportation proceeding was reopened later that day when Corrales–Beltran indicated that he wished to proceed without a lawyer. During the hearing, Corrales–Beltran stated that he immigrated to the United States from Mexico on October 29, 1973, and admitted that on December 7, 1981, he was convicted of possession of heroin in violation of 21 U.S.C. § 844. The Immigration Judge then asked Corrales–Beltran whether he accepted the $15,000 bail amount or wanted a bond hearing. Corrales–Beltran requested a hearing and reiterated that he wished to proceed without an attorney. Bail was reset at $8,000. The Immigration Judge then inquired whether Corrales–Beltran wished to proceed with the deportation hearing or "bond out on the reduced bond." Corrales–Beltran responded that he did not have the money to bond out, and therefore, that he wished to proceed.

The Immigration Judge then informed Corrales–Beltran that the government contended that he was deportable and could lose his permanent resident status because of his prior conviction of a controlled substance offense. The Immigration Judge also informed Corrales–Beltran that he was eligible for a waiver of deportation pursuant to section 212(c) of the Immigration and Naturalization Act ("INA").[2] Corrales–Beltran stated that he

1. Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

2. Before the comprehensive amendments to the INA, an alien lawfully admitted for permanent residence who was subject to deportation because of a criminal conviction could apply to the Attorney General for discretionary relief from deportation pursuant to section 212(c) under certain circumstances. *See* 8 U.S.C. 1182(c), *repealed by* the Illegal Immigration Reform and Immigrant Responsibility

wished to apply for a waiver. The Immigration Judge then set the case for a section 212(c) hearing on April 10, 1991.[3]

At the April 10, 1991, hearing, the Immigration Judge noted that Corrales–Beltran remained unrepresented and informed him that he would need people to testify or write letters in support of his section 212(c) application. The Immigration Judge also inquired as to how much time Corrales–Beltran would need to gather such evidence for presentation at the hearing. The following dialogue ensued:

C–B: You see from here, I cannot do anything.

IJ: Well, sir, the telephone is about the only thing you can do. You have already had a bond hearing and the bond amount has been set for your release. If you can't bond out and can't be released because of the money that you are unable to put up to be released, you will have to do it by telephone and that is why I am asking you, sir. Because, of course, you sit in custody until we are ready for the hearing. And I certainly do not want you to stay in custody any longer than you have to.

C–B: I would like it if you could lower the bond and, if you cannot, then just to sign the papers and renounce.

IJ: And what, renounce? When you say renounce, sir, I think I know what the word means, but when you say renounce, do you mean, you renounce or give up your permanent residence, is that what you are telling me?

C–B: Yes, because you see there are a lot of problems and it's been a long time already with this problem.

The Immigration Judge did not lower the bail amount. Instead, he offered to immediately schedule the section 212(c) hearing. Corrales–Beltran accepted the offer. Twenty-three days later, on May 3, 1991, the section 212(c) hearing was held. The Immigration Judge denied the application for waiver of deportation and advised Corrales–Beltran of his right to appeal the denial of his section 212(c) application.

Although Corrales–Beltran originally expressed a desire to appeal the denial of his section 212(c) application, he later recanted, stating, "I don't want to be detained any longer so that if I am going to be deported I'd rather it be done now." The Immigration Judge then explained: "The Board of Immigration Appeals may reverse me and you won't be deported. But until your appeal is decided, you will be held in custody on an $8,000 [sic], unless of course the government determines to raise the bond, which the district director has the right to do, but I will not consider that unless that is done." Corrales–Beltran then asked, "Is there any possibility that the bond can be lowered more?" The Immigration Judge replied: "I see no purpose in reducing the bond. In fact, after having reviewed your case, I would probably raise the bond at this point, but I am not about to lower it." Corrales–Beltran then indicated that he wished to be deported as soon as possible. Upon Corrales–Beltran's change of heart, the Immigration Judge proceeded to fully advise Corrales–Beltran of his right to appeal the § 212(c) waiver and the consequences of failing to do so:

IJ: Well, sir, I want you to understand, however, that I can appreciate what you're saying, that you want to waive it. But, if the only reason you want to waive it is because you want to get out of jail or out of custody, I want you to understand that you won't have a right to come back

---

Act ("IIRIRA"), Pub.L. No. 104–208, Div. C., § 304(b), 110 Stat. 3009, 3597 (Sept. 30, 1996).

**3.** It is undisputed that in 1991, Corrales–Beltran was eligible to apply for discretionary relief pursuant to section 212(c) of the INA.

here later and say I've changed my mind, I want to appeal the case. Once you're deported sir, you've lost your permanent residence. So, I want you to understand sir, that if you waive the appeal today and it's merely because you want to get out of custody and be deported to Mexico, that consequence of that waiving the appeal would be to lose your permanent residence. Do you understand that sir?

C–B: Well, as I understood it, either way I've lost it.

IJ: No, sir. As I've said that's why they have appeals of my decisions. I may be wrong, I may be reversed. And that's why you take an appeal, sir. And if you convince the Board of Immigration of Appeals that I am wrong, they'll permit you to stay here as a permanent resident. Until they make that decision, of course, you will be held in custody unless you post a bond. Now, with that explanation again, sir, are you still telling me that you've changed your mind and you accept my decision or do you still reserve the appeal and take that appeal as you indicated earlier.

C–B: I don't want to appeal because there's so many things that you're talking about that don't relate to me and I want to get it over with.

IJ: Sir, I have no idea what you mean that doesn't relate to you, what do you mean, sir?

C–B: Many of the things on there. . . .

IJ: But sir let's get back to your issues before me. Are you still determined at this time to waive appeal? You no longer wish to take an appeal?

C–B: No, I'm tired of being in detention. I want to get out.

IJ: So I gather sir you're telling me that you waive appeal at this point and that all you wish to be is deported back to Mexico. Is that correct?

C–B: Yes, because I feel maybe there later going to be another way that I can gain this back.

IJ: You mean your permanent residence?

C–B: Yes, because as I understand it that if five years go by, I can try again.

IJ: Well, sir, I want to tell you so that there's no misconception. The answer is no. Under the current laws of this country because of your conviction for a narcotics offense there is no waiver. Five years from now or anytime from now under the present law that would permit you to legally come back to this country.

C–B: Well if at any time I can hire an attorney and he can prove that all these things are not true what would happen?

IJ: Sir, I don't speculate as to what's going to happen. I only want you to understand that if you waive your appeal today, once you are deported, sir, you have lost your permanent residence, and to my knowledge under the present laws of this country, there's nothing you can do to come back here legally. Do you understand that?

C–B: Thank you, yes.

IJ: Well with that further explanation again, do you wish to take an appeal of my decision or do you wish to accept it?

C–B: No I want to leave.

IJ: All right, I'll note that the respondent has waived appeal and that the order is entered and final in this matter and that the hearing is closed.

The Immigration Judge entered the deportation order, and Corrales–Beltran was deported.

On November 5, 1997, Corrales–Beltran was arrested at the border after applying for admission into the United States from Mexico through the San Ysidro, California, Port of Entry. A federal grand jury returned a three-count indictment on January 7, 1998, charging him with two counts of attempted entry after deportation in violation of 8 U.S.C. § 1326(a), (b)(1) and (b)(2),[4] and one count of false claim to United States citizenship, in violation of 18 U.S.C. § 911.

In April, 1998, Corrales–Beltran moved to dismiss the § 1326 charge, asserting that the May 3, 1991, deportation alleged in the indictment was invalid because the Immigration Judge failed to advise him of his right to appeal the bail determination, and, as a result, that he unknowingly waived his right to appeal the deportation order. The district court denied the motion, concluding that Corrales–Beltran had no constitutional right to be advised of his right to appeal the bail determination and that he voluntarily waived his right to appeal the deportation order. Corrales–Beltran entered a conditional plea of guilty to the § 1326 charge, reserving his right to appeal the denial of his motion to dismiss the indictment. Applying U.S.S.G. § 2L1.2, the district court sentenced Corrales–Beltran to seventy-seven months in custody and imposed a three-year term of supervised release.

Corrales–Beltran timely appealed.

## III.

■■■ We first consider Corrales–Beltran's contention that the deportation order underlying the indictment was invalid and that, therefore, the district court erroneously denied his motion to dismiss the indictment. "In a criminal prosecution un-

der § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate–Martinez*, 133 F.3d ,1194, 1197 (9th Cir.1998) (citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)), *cert. denied*, —— U.S. ——, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998). "If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding." *Id.* The defendant can succeed on a collateral challenge "only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* Where the defendant alleges prejudice in the context of an application for waiver of deportation, he must "make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *United States v. Arce–Hernandez*, 163 F.3d 559, 563 (9th Cir.1999).

■■■ A deportee may waive his right to judicial review of his deportation order, but that waiver must be "considered and intelligent." *United States v. Lopez–Vasquez*, 1 F.3d 751, 753 (9th Cir.1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (internal quotation marks omitted)). "Otherwise, the deportee is deprived of judicial review in violation of due process. The government bears the burden of proving the waiver." *Id.* at 753–754.

The Immigration Judge did not inform Corrales–Beltran of his right to appeal the bail determination under 8 C.F.R.

---

**4.** The indictment alleged one count of violating § 1326(b)(1) and one count of violating § 1326(b)(2) because Corrales–Beltran attempted to enter the United States after having been convicted of a felony and an aggravated felony. After the indictment was returned, the Supreme Court decided *Al-*

*mendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that § 1326(b) is merely a sentencing enhancement provision. Accordingly, the district court consolidated the two counts, and the felony allegations in the indictment were stricken.

§ 242.2(d) (1991).[5] Corrales–Beltran does not bring a constitutional challenge based on this failure alone;[6] rather, he asserts that this defect in the proceeding was so "inextricably linked" with his waiver of his right to appeal the denial of his section 212(c) application that it prevented that waiver from being "considered and intelligent." We find this argument unconvincing, and further conclude that even if the failure to advise Corrales–Beltran of his right to appeal bail did impair his knowing waiver of his § 212(c) appeal, he was not thereby prejudiced.

#### A.

◼ Corrales–Beltran relies upon *United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989), overruled in part by *Proa–Tovar*, 975 F.2d at 595, to support his argument that the failure to advise him of the right to appeal bail rendered his section 212(c) waiver of appeal constitutionally defective. This reliance is misplaced. In *Villa–Fabela*, we held that the defendant's waiver was knowing and intelligent notwithstanding the Immigration Judge's failure to ask the defendant why he had suddenly changed his mind and waived appeal in view of his statement that he decided to waive appeal due to the amount of custodial time that would be required pending appeal. We reasoned:

> The immigration judge advised Mr. Villa–Fabela of this right and gave him the statutorily mandated period of ten days to contemplate waiver and to initiate the appeal. The immigration judge had no reason to believe that Mr. Villa–Fabela misunderstood the amount of time an appeal might take. Mr. Villa–Fabela did not ask any questions regarding his

right to appeal, the time an appeal might take, or the possibility of decreasing bail. Mr. Villa–Fabela expressly waived his right to appeal. Under these circumstances, the immigration judge's failure to question Mr. Villa–Fabela regarding his waiver did not effectively preclude judicial review.

*United States v. Villa–Fabela*, 882 F.2d at 441.

Similarly, here, judicial review has not been precluded. Indeed, the Immigration Judge conducted a more searching inquiry than in *Villa–Fabela*. The Immigration Judge advised Corrales–Beltran of the right to appeal, had the clerk provide him with the appeal forms, and advised him of the ten day period for completing the forms. The Immigration Judge further directed the INS officer who was present to make sure that Corrales–Beltran had the opportunity to appeal since he was in custody and unable to route the documents himself. The Immigration Judge then *sua sponte* waived the filing fee for the appeal because Corrales–Beltran was unemployed. It was then that Corrales–Beltran made his choice clear: if he were to remain in custody pending appeal because he could not make the $8,000 bond, he would forgo the appeal. The Immigration Judge understood this was the choice Corrales–Beltran was making. He clarified Corrales–Beltran's position and reminded him of its serious consequences:

> But, if the only reason you want to waive it is because you want to get out of jail or out of custody, I want you to understand that you won't have a right to come back here later and say I've changed my mind, I want to appeal the case. Once you're deported sir, you've

---

5. Section 242.2(d) provides: "The determination of the Immigration Judge as to custody status or bond may be based upon any information which is available to the Immigration Judge or which is presented to him by the alien or the Service. The alien and the Service may appeal to the Board of Immigration Appeals from any such determination." 8 C.F.R. § 242.2(d) (1991).

6. Corrales–Beltran did not argue below and does not argue on appeal that his constitutional rights were violated by the Immigration Judge's failure to inform him of the right to appeal this bail determination.

lost your permanent residence. So, I want you to understand sir, that if you waive the appeal today and it's merely because you want to get out of custody and be deported to Mexico, that consequence of that waiving the appeal would be to lose your permanent residence. Do you understand that sir?

A further colloquy ensued during which the Immigration Judge asked a series of questions to ensure that Corrales–Beltran understood that the Board of Immigration Appeals could reverse the deportation order, that his conviction for a narcotics offense precluded his eligibility for a waiver and the finality of his decision to waive appeal. We find nothing in the record to indicate that Corrales–Beltran did not understand his right of appeal and freely chose to waive it rather than remain in custody, knowing that he would forever lose his permanent residence status. While we do "not take lightly the INS's breach of its duties to inform aliens of their rights," *Villa–Fabela,* 882 F.2d at 440, under the circumstances in this case, particularly in light of the Immigration Judge's repeated inquiries of and admonitions to Corrales–Beltran, we conclude that the failure to advise of the right to appeal the bail determination does not rise to the level of fundamental unfairness contemplated by the Supreme Court in *United States v. Mendoza–Lopez,* 481 U.S. at 839, 107 S.Ct. 2148. *See also United States v. Palacios–Martinez,* 845 F.2d 89, 92 (5th Cir.1988) (finding no fundamental unfairness shown where appellant was informed of his basic rights and had the opportunity to exercise those rights).

### B.

■■■ Even if we were to determine that the defect in the proceeding was of constitutional dimension, we would be unable to find on this record that Corrales–Beltran was prejudiced as a result of that defect. To successfully challenge the deportation order, Corrales–Beltran "must prove prejudice as a result of the due process violation in his deportation proceeding." *See Zarate–Martinez,* 133 F.3d at 1198. To show that he was prejudiced, Corrales–Beltran must offer "plausible grounds of relief which might have been available to him but for the deprivation of rights." *Id.* (quoting *Leon–Leon,* 35 F.3d at 1432) (internal quotation marks omitted). Put differently, he "must show that 'a direct appeal could ... have yielded a different result.' " *United States v. Gutierrez–Alba,* 128 F.3d 1324, 1326 (9th Cir. 1997) (quoting *Proa–Tovar,* 975 F.2d at 595), *cert. denied,* —— U.S. ——, 118 S.Ct. 1855, 140 L.Ed.2d 1103 (1998).

In a somewhat attenuated argument, Corrales–Beltran contends that the defect in the proceedings caused the constitutional violation—a less than fully considered waiver—which in turn prejudiced him by depriving him of a direct appeal. He argues that a direct appeal "*could* have yielded a different result because applications for discretionary relief are granted over fifty percent of the time." To show prejudice, however, Corrales–Beltran must make a plausible showing that the Attorney General would have exercised discretion in his favor because of the unique circumstances of his own case. *Arce–Hernandez,* 163 F.3d at 563; *see, e.g., United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996) (finding prejudice where defendant showed three plausible factors that would support his application for discretionary relief pursuant to section 212(c)).

Even if Corrales–Beltran is correct that discretionary relief applications are granted fifty percent of the time, it would be sheer speculation to conclude, without more, that his appeal would have been successful. We must reject this argument because Corrales–Beltran does not offer any more than this general statistic toward the requisite "plausible showing" that the specific facts of his case would warrant a favorable exercise of discretion by the Attorney General.

Nor does Corrales–Beltran make a plausible showing that the Immigration Judge's failure to advise him of his right to appeal the bail determination prejudiced the entirety of the proceedings. He argues that because of this failure he was forced to present his case *pro se* and while in custody. He contends that he may have been able to present a better application for waiver of deportation had he been able to secure release pending the 212(c) hearing. Corrales–Beltran again offers no more than speculation to support his assertion of prejudice, and fails to set forth any plausible argument or factual basis that would support the conclusion that an appeal would have resulted in lower bail. Indeed, the entire record is to the contrary, as the Immigration Judge noted. Perhaps more significantly, he does not specifically identify any witnesses or evidentiary material that he would have been able to procure to support his section 212(c) application had he been released on bond. Accordingly, we conclude that Corrales–Beltran has failed to make a "plausible showing" that the Attorney General would have exercised discretion in his favor had he been released from custody pending the section 212(c) hearing. *See Arce–Hernandez*, 163 F.3d at 563.

Because Corrales–Beltran has not demonstrated either a constitutional due process violation or that he was prejudiced by the Immigration Judge's failure to advise him of his right to appeal the deportation order, his collateral attack fails. ·

## IV.

The district court sentenced Corrales–Beltran under U.S.S.G. § 2L1.2, "Unlawful Entering or Remaining in the United States." [7] He argues that because he was convicted of "attempted" entry after de-portation, the district court should have sentenced him under U.S.S.G. § 2X1.1, "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)." We reject this argument.

■ By the plain language of the statute, attempting to enter the United States in violation of § 1326(a) is a separate substantive crime. Section 1326 contemplates three distinct substantive offenses, specifically providing that "any alien who ... has been ... deported ... and thereafter ... enters, *attempts to enter*, or is at any time found in, the United States shall be fined ... or imprisoned ... or both." 8 U.S.C. § 1326(a), (b)(4) (emphasis added). The ordinary definition of "attempt" is: "to make an effort at; try; undertake." *Random House Webster's College Dictionary* 88 (1991). Thus, when a previously deported alien "makes an effort" or "tries" to reenter the United States, he or she violates a substantive provision of § 1326, separate and apart from entering or being found in the United States.

This conclusion also logically follows from our decision in *Mills v. United States*, 273 F. 625 (9th Cir.1921), which involved an appeal by a defendant who was convicted of knowingly, willfully, and unlawfully attempting to return and enter the United States in violation of § 4 of the Immigration Act of February 5, 1917, the precursor statute to § 1326. *See* 39 Stat. 874, 878–879, 8 U.S.C.A. § 138 (repealed 1952). [8] In *Mills*, we held that "the statute expressly makes the attempt a punishable offense." 273 F. at 627. We explained:

> The attempt is in itself a substantive offense. It is the act of crossing the boundary line into the United States. It is not an attempt to commit an independently described offense, in the sense in which the word "attempt" is ordinarily

---

7. The "Statutory Index" of the Sentencing Guidelines, Appendix A, specifies section 2L1.2 as the guideline ordinarily applicable for persons convicted of § 1326 violations. *See* U.S.S.G.App. A.

8. Section 4 provided: "[A]ny alien who shall, after he has been excluded and deported or arrested and deported ..., attempt thereafter to return to or to enter the United States shall be deemed guilty of a misdemeanor...." 39 Stat. 874, 878–879.

**1320**

used in criminal law. It is the actual reentry into the United States.

*Id.* Although § 4 was repealed in 1952, the substantive offense it prohibited is now covered by § 1326. *See* 8 U.S.C.A. § 138 (repealed 1952).

Every other circuit that has considered whether § 1326 contemplates three distinct substantive offenses has concluded that it does. *See United States v. Estrada-Quijas,* 183 F.3d 758, 761 (8th Cir. 1999) ("An individual can violate § 1326 in three ways: (1) by entering, (2) by attempting to enter, or (3) by being found in the United States . . ." ); *United States v. Castrillon-Gonzalez,* 77 F.3d 403, 406 (11th Cir.1996) ("The language of § 1326 clearly contemplates three distinct offenses. . . ." ); *United States v. Santana-Castellano,* 74 F.3d 593, 597 (5th Cir.1996) ("The clear language in 8 U.S.C. § 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense: (1) when he illegally enters the United States; (2) when he attempts to illegally enter the United States; or (3) when he is at any time found in the United States."); *United States v. Rivera-Ventura,* 72 F.3d 277, 281 (2d Cir. 1995) ("Section 1326(a), by its terms, describes an offense that is complete when any of three events occurs: when a previously deported alien (1) 'enters,' or (2) 'attempts to enter,' or (3) 'is at any time found in' the United States."); *United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir. 1994) ("[W]e think it plain that 'enters,' 'attempts to enter,' and 'is at any time found in' describe three distinct occasions on which a deported alien can violate Section 1326."). We join our sister circuits by holding that a previously deported alien violates § 1326 when he or she attempts to enter the United States.

We therefore reject Corrales–Beltran's argument that U.S.S.G. § 2X1.1 was the applicable guideline, and agree with the district court's use of U.S.S.G. § 2L1.2 in the calculation of his offense level.

**V.**

For the foregoing reasons, we affirm the district court's denial of Corrales–Beltran's motion to dismiss the indictment and the district court's application of § 2L1.2 in sentencing.

**AFFIRMED.**