## GILES v. UNITED STATES.

No. 11187.

Circuit Court of Appeals, Ninth Circuit.
Oct. 14, 1946.

Rehearing Denied Nov. 13, 1946.

DENMAN, Circuit Judge, dissenting.

John Knight Giles, in pro. per.

Frank J. Hennessy, U. S. Atty., and James T. Davis, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

Appellant was convicted of a violation of 18 U.S.C.A. § 753h.[1] The indictment charged that the accused, being a person committed to the custody of the Attorney General of the United States and his authorized representative, namely, the warden of the United States penitentiary at Alcatraz Island, did on or about July 31, 1945, attempt to escape from custody.

The evidence is that on the date named appellant was an inmate of Alcatraz, having been duly committed to the custody of the warden as the representative of the Attorney General. On the morning of that date, clothed in prison uniform, he was working with other inmates of the penitentiary on a dock at Alcatraz under the general supervision of prison guards. The dock is outside the walls at a distance of some three-eighths of a mile from the prison proper. An army vessel arrived at the dock at 10:15 A. M. and departed a few minutes later, during which time appellant, clad now in the uniform of an army sergeant, contrived to get aboard her from beneath the wharf. One of the crew saw the man as he came aboard. Immediately prior to the docking of this vessel the prison guards counted the prisoners on the dock, and appellant was present. Immediately after the vessel pulled away from the dock the prisoners were again counted and appellant was found missing. A search

was at once instituted. From Alcatraz the vessel proceeded to Fort McDowell on Angel Island, about three and a half miles distant. On the arrival of the boat at Fort McDowell appellant was detained, and shortly thereafter prison authorities arrived from Alcatraz and returned him to the penitentiary.

Appellant argues that he was not in custody while going about the chores assigned him on the dock, hence he could not be deemed to have attempted to escape from custody. The reason advanced is that he was not at all times under the observation of one or the other of the prison guards. The argument is without force. The statutory term "custody," as applied, certainly, to the situation of appellant, is not so narrow and restricted. Appellant likens the case to one where the custodian of a prisoner purposely abandons his charge, leaving him free to go his own way. There was no abandonment of custody in this instance. Moreover, the question of custody was submitted to the jury as one of fact in an instruction stating that, in order to convict, the evidence must show beyond a reasonable doubt that the accused was actually in custody at the beginning of the alleged attempt to escape.

[2] In connection with this phase of his defense appellant complains of the denial by the court of his motion to strike part of the answer of a government witness, a prison guard. On cross examination appellant asked this witness: "Now, Mr. Crowell, in my work on the dock, did you follow me around and keep me under supervision all the time?"; to which inquiry the witness replied, "not myself personally, no, but there were other men that had you under supervision." While the latter portion of the reply was not strictly responsive, the ruling on the motion to strike, if error at all, was not prejudicial. As already observed, it was not in the circumstances of this case essential to custody

---

[1] "Any person committed to the custody of the Attorney General or his authorized representative, or who is confined in any penal or correctional institution pursuant to the direction of the Attorney General, or who is in custody by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or who is in custody of an officer of the United States pursuant to lawful arrest, who escapes or attempts to escape from such custody or institution, shall be guilty of an offense. * * *" 18 U.S.C.A. § 753h.

that the guard follow the prisoner around and keep him every moment under observation.

It is contended that there was a fatal variance between the allegations of the indictment and the proof. The claim is that a consummated escape was proven, not an attempt to escape as charged; and that appellant is exposed by the verdict to future double jeopardy, that is to say, a conviction for attempted escape will not bar a prosecution for escaping.

There is in the federal jurisdiction persuasive and quite recent authority to the effect that an attempt to violate an analogous statute includes a successful as well as an unsuccessful endeavor. O'Brien v. United States, 7 Cir., 51 F.2d 193, certiorari denied 284 U.S. 673, 52 S.Ct. 129, 76 L.Ed. 569; Guzik v. United States, 7 Cir., 54 F.2d 618, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937. No violence is done the statute before us by giving it a like interpretation. For another and different reason, the claim of fatal variance between the charge and the proof is not well taken. On reflection it will be seen that in cases arising under this statute the line of demarcation between an escape and an attempt to escape is often too shadowy to permit of the laying down of absolutes. We are not able to say that on the evidence here the jury's verdict of attempted escape was without rational support. The accused's enterprise substantially aborted. Gauged by ordinary standards of success, it failed of its purpose. The issue was submitted to the jury in an instruction stating that "an attempt is an act tending toward the accomplishment, and done in part execution of the design to commit a crime, exceeding an intent but falling short of an execution of it." Appellant complains of the instruction only to the extent of insisting that a more elaborate one on the subject proposed by himself should have been given. We think the instruction went as far as the court could fairly go without invading the jury's province.

The statute makes both an escape and an attempt to escape an offense, and the same punishment is prescribed for each. The general rule is that a prosecution for a minor offense included in a greater will bar a prosecution for the greater, if on an indictment for the greater the accused can be convicted of the lesser. 22 C.J.S., Criminal Law, § 283, p. 425; Wharton Cr. Law (12th Ed.), Vol. I, § 394, p. 533; § 395, p. 539. Compare Ex parte Nielsen, Petitioner, 131 U.S. 176, 186-190, 9 S.Ct. 672, 33 L.Ed. 118. The rule undoubtedly applies here.

What has been said disposes of subsidiary points raised by appellant.

Affirmed.

DENMAN, Circuit Judge (dissenting).

I dissent from the opinion of the court on two grounds. One is that two of the three major contentions of the appellant in his argument and briefs are not mentioned, much less discussed in the opinion. Cf. Ballard v. United States, 9 Cir., 152 F.2d 941, 947. The other is that these two contentions should prevail and the judgment of conviction be reversed.

The brief of the government describes Alcatraz Island as consisting of a penitentiary and a wide area of land surrounding it. Appellant was committed to the penitentiary not to Alcatraz Island. The island is visible from the shores of San Francisco and this area outside the penitentiary well could contain ten or twelve acres. The charge is attempting to escape from custody—not attempting to escape from the penitentiary, a different offense as shown by the statute set forth in the court's opinion.

It is admitted by the government that the appellant did not attempt to escape from the penitentiary. It was upon the government to prove to the jury beyond a reasonable doubt that appellant in the non-penitentiary portion of Alcatraz Island was (a) in the custody of some official representative of the Attorney General and (b) that he attempted to escape therefrom.

Regarding the proof of custody, the "lieutenant" claimed by the government to have the custody of appellant was not produced as a witness. Another witness was produced who stated that appellant had

been in the custody of this lieutenant, who sent appellant to perform certain chores. There is no evidence that anyone remained as a physical custodian of appellant after he was sent on this mission.

In this situation, with the failure to produce the claimed custodian and the reliance upon secondary evidence, the jury well could have believed that it was not proved beyond a reasonable doubt that at the time of the claimed attempt to escape from custody the appellant was in anyone's physical custody. Assuming, arguendo, that there was evidence to warrant the inference that custody existed, the prosecuting attorney removed from the jury the necessity of drawing any inference by stating that the jury could find appellant guilty .of an entirely different offense, namely, of attempting to escape from the penitentiary. In his closing address to the jury the prosecuting attorney stated the law to be "To escape from the penitentiary itself or its ground or from any place which the Warden has set up as being the limits of the penitentiary is to escape from his custody, although you may not actually escape from his *physical* custody or the *physical* custody of any one of his representatives."

That is saying to the jury that "Even though you do not believe the government's single witness as to custody, or if the failure to produce the physical custodian makes a reasonable doubt as to the existence of a physical custody, nevertheless you can convict the accused of attempting to escape from the *penitentiary.*"

Appellant at once objected to this misstatement of the law by the prosecutor, but the court, instead of instructing the jury to disregard it, stated "You may discuss the evidence that is now before the Jury and draw any inferences which the law will permit. You may proceed."

Appellant thereupon sought to have this error clarified to the jury by the following requested instruction as to the "physical" nature of custody:

"I charge you that the commitment is only the authority for a prisoner's custody; it is not the custody itself. A commitment may exist authorizing a prisoner's custody, but it does not necessarily follow that he is in custody at all times during the existence of that commitment. The authority of the commitment is continuous from the time it is issued until the date of the expiration of the sentence; but the custody which it authorizes does not begin until the prisoner is placed in *physical* safekeeping, and this custody may be interrupted at any time thereafter. The law does not prohibit, nor is the defendant charged with, attempting to escape from the authority for his .custody; he is charged with attempting to escape from custody." (Emphasis supplied.) The court refused to give this instruction and gave no equivalent instruction, nor did the court at any time advise the jury that they should disregard the wrongful statement of the prosecutor or even that they should confine their knowledge of the law to the law as stated by the court.

There was further ground for requiring the requested instruction. Appellee had made formal proof of the documents showing that appellee had the *right* to the custody. Without an instruction distinguishing between the Warden's right to custody and the physical custody itself, the jury well might infer that the mere right to custody actually amounted to the physical custody wherever the appellant actually may be in the area of the island or elsewhere.

The appellee makes this contention here, claiming that the right of the Attorney General to have custody of a prisoner means that the prisoner is in his custody anywhere in the area over which the Attorney General's authority extends—that is the entire United States. The appellee's brief states that it is an erroneous assumption that, to violate the statute, it is "necessary for him [the convict] to escape or attempt to escape from the actual *physical* custody of the Attorney General or one of his authorized representatives." That is to say, the prisoner is actually in the custody of the Attorney General though there be no physical custody at all.

There are two obvious comments on this contention so urged on this court. The first is that the crime of *escape* from custody never could be committed in the

United States. The felon, no matter what he does, is still in custody.

The second comment is relevant to the trial below. If such a contention of custody without "physical" custody may seriously be urged on this court, then it would be a most likely belief of the jury. Hence the necessity for the refused instruction on the need for a "physical" custody as distinguished from the mere right to custody.

The judgment of conviction should be reversed.