UNITED STATES of America,
Plaintiff–Appellee,

v.

Antonio RIVERA–RELLE,
Defendant–Appellant.

No. 02–50211.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2003.

Filed March 6, 2003.

Amended June 18, 2003.

Ross E. Viselman, San Diego, California, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), David P. Curnow, Assistant United

States Attorney, San Diego, California, for the plaintiff-appellee.

Before HALL, THOMPSON, and BERZON, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

The opinion filed March 6, 2003 (322 F.3d 670), is hereby amended as follows:

Footnote 9, insert the following two new paragraphs after the first paragraph:

To support its proposition that an attempt conviction can derive from a completed crime, *Lightfoot* cited a plethora of cases from different jurisdictions, including nine that preceded the enactment of section 1326 in 1952. *Lightfoot*, 360 A.2d at 428 & n. 3. Rivera argues that the common law of attempt in 1952 required a failure to complete the underlying crime and that our decision in *Gracidas–Ulibarry*, 231 F.3d at 1190, compels reading the statute to incorporate this purportedly well-established meaning of attempt from a half-century ago. Assuming without deciding that Rivera's methodology is legally correct, we find no merit in his argument because Rivera has not shown that the common law of attempt in 1952 was well-established in the form that he claims.

The only case that Rivera cites to support his position in fact endeavors to explain why many American common law jurisdictions did *not* establish "the rule of no conviction for attempt when shown to be successful," concluding "that the rule that a defendant charged with an attempt must be acquitted if shown to have committed the full offense has today no reasonable basis and should be rejected." *United States v. Fleming*, 215 A.2d 839, 841 (D.C.1966) (noting that the rule "was due to the general English doctrine of merger [of misdemeanor in felony] and not to any unusual requirement in the law of attempt .... The English doctrine of merger of offenses has never been fully accepted in this country, particularly in modern times." (citing *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946))). Rivera has not overcome the substantial weight that this analysis of American common law and the earlier cases cited in *Lightfoot* deserve to be accorded. His theory of the common law of attempt was therefore not well-established in 1952.

With this amendment, the panel has voted to deny appellant's petition for panel rehearing. Judge Berzon has voted to deny the petition for rehearing en banc and Judges Hall and Thompson have recommended denial. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

The clerk shall accept no further filings in this case.

### OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge.

Antonio Rivera–Relle, a previously deported alien, appeals his conviction for attempting to enter the United States without the consent of the Attorney General in violation of 8 U.S.C. § 1326. Rivera assigns two errors to his conviction. First, he contends that to be guilty of the crime

of *attempting* to enter the United States, the government must prove beyond a reasonable doubt that he never, in fact, succeeded in entering the United States. Since the jury was not so instructed, he argues his conviction must be reversed. Second, he argues that the government improperly destroyed evidence and the district court committed reversible error by not sanctioning the government.

We have jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under 18 U.S.C. § 3231. We find no merit in either assignment of error and AFFIRM Rivera's conviction.

### FACTS

On October 7, 2001, Border Patrol Agent Sarah C. Graving was on duty at the Port of Entry in Calexico, California. She was monitoring infrared cameras that are focused on the fence that marks the international border between the United States and Mexico. At approximately 2:00 a.m., Agent Graving observed, through the cameras, three individuals climbing the fence on the Mexican side. They then slid down the fence on the United States side and crossed the street to an abandoned field. Agent Graving radioed her observations to agents in the area. Border Patrol Agent Phillip M. Jacobs responded and within a few minutes, he began to inspect the area. Agent Graving directed Agent Jacobs to the location of the individuals via radio dispatch.[1] Agent Jacobs found three individuals lying in a field. Rivera was one of the three individuals taken into custody. He was arrested and charged with attempting to enter the United States illegally in violation of 8 U.S.C. § 1326. Rivera is a citizen of Mexico. Prior to this incident, he had been deported from the United States.

On October 30, 2001, Rivera filed a motion to compel discovery of, *inter alia,* "dispatch or any other tapes ... that relate to the circumstances surrounding his arrest." The Government did not address the existence of any dispatch tapes in its response filed on November 9, 2001. On January 7, 2002, the district court held a hearing on the parties' motions in limine.[2] At the conclusion of the hearing, defense counsel told the court that he had just learned earlier that day that the communications between Agents Graving and Jacobs were recorded on tape, pursuant to regular procedure, and requested a copy of that dispatch tape.[3] The government explained that it could not produce the dispatch tape because the tape no longer existed, as dispatch tapes are generally kept for only one month.[4] Defense counsel pointed out that he filed a motion seeking discovery of any relevant tapes less than a month after the incident. Since the dispatch tape no longer existed, production of the tape was not possible. The district court decided not to sanction the government and stated:

> There is no indication that it was destroyed for purposes of destroying evidence. I haven't heard anything that

---

1. The conversations between Agents Graving and Jacobs were recorded on audio tape. Rivera requested copies of the tape. The tape, however, was never produced because it was reused.

2. Pretrial motions were heard before Judge William F. Nielsen, but the case was tried before Judge Judith N. Keep.

3. Attorneys for the Government claim to have similarly discovered for the first time on that day that the Agents' conversation was recorded on tape.

4. Specifically, the Government later informed defense counsel and the court that the tape "was reused, recycled, [and] taped over, after a period of time."

suggests that. It's apparently the procedure to not keep those tapes.

The district court also questioned defense counsel about the relevance of the dispatch tape to Rivera's defense. Defense counsel replied that whether Rivera was apprehended in this country was at issue, and "in order for the Government to prove that he's guilty of attempted entry, they have[to] prove that there was constant surveillance or something along those lines." According to defense counsel, the dispatch tape could help the trier of fact determine whether Rivera was actually under constant surveillance. *Id.* Again, the district court stated:

> I see no indication that it was a deliberate attempt to destroy evidence and I think that if the eyewitnesses are brought here to testify as to what they saw and what they did, firsthand knowledge, and you have the opportunity to cross-examine and test them, that should be sufficient.[5]

Rivera proposed seven jury instructions. A number of them dealt with Rivera's theory that, in order to be convicted for attempted unlawful entry, he could not have completed an entry into the United States. Therefore, according to Rivera, the Government had to prove that he was never free from official restraint. For example, Rivera proposed the following instruction:

> Mr. Rivera's theory of the case is that Agent Graving did not see continuously observe [sic] him from the point he crossed the fence, until the point he was arrested by Agent Jacobs. Thus, the government has not proven beyond a reasonable doubt that Mr. Rivera was

never free from official restraint. In other words, it is Mr. Rivera's theory that the government has not proven that he attempted to enter, as opposed to entered the United States—two distinct crimes.

ER 3. Rivera also requested an instruction stating that "[b]ecause the government has destroyed the[dispatch] tape, you must assume that any evidence on that tape would have been favorable to Mr. Rivera and his theory of the case." The district court rejected all of Rivera's proposed instructions.

Rivera was found guilty by a jury and sentenced to 15 months in prison.

## STANDARDS OF REVIEW

◼ We review a district court's jury instructions regarding the elements of a statutory crime de novo. *United States v. Patterson*, 292 F.3d 615, 629–30 (9th Cir. 2002).

◼ Whether a defendant's due process rights were violated by the government's failure to preserve potentially exculpatory evidence is reviewed de novo. *Id.* at 626. A district court's discovery rulings are reviewed for an abuse of discretion. This court will only reverse a conviction for a discovery violation if the district court abused its discretion and the error resulted in prejudice to substantial rights. *United States v. Amlani*, 111 F.3d 705, 712 (9th Cir.1997).

## DISCUSSION

### A. The Elements of Attempted Entry

◼ Under 8 U.S.C. § 1326, a previously deported alien who "enters, attempts to

---

5. During the trial, Judge Keep reaffirmed Judge Nielsen's ruling, stating that the "defendant is not prejudiced by having both officers here under oath to be examined and whose credibility can be examined by the jury and tested absent of the tapes in these circumstances. It doesn't constitute such a violation, if at all, of Rule 16 that necessitated the very strong remedy of dismissal."

enter, or is at any time found in" the United States without the express consent of the Attorney General is subject to a fine and imprisonment for up to two years. "Section 1326 creates three substantive offenses"—1) entering; 2) attempting to enter; and 3) being found in the United States. *United States v. Corrales–Beltran,* 192 F.3d 1311, 1319–20 (9th Cir. 1999). Rivera was indicted for attempting to enter the United States.

■ Rivera vigorously argues that failure to complete an offense is an element of an attempt crime. Rivera therefore contends that the district court erred by not instructing the jury that the government must prove beyond a reasonable doubt that he did not in fact enter the United States in order to be guilty of the crime of attempted entry. Essentially, Rivera asks this court to reverse his conviction not because the evidence tends to show that he is "innocent, but for the very strange reason, that he [is] too guilty." *State v. Shepard,* 7 Conn. 54, 57 (1828).

■ Rivera's argument that he may have entered the United States is based on the specialized meaning of the term "entry" in immigration law. To "enter" the United States, one must cross the border and be free from official restraint. *United States v. Pacheco–Medina,* 212 F.3d 1162, 1164 (9th Cir.2000). "More particularly, the restraint may take the form of surveillance, unbeknownst to the alien; he has still not made an entry despite having crossed the border with the intention of evading inspection, because he lacks the freedom to go at large and mix with the population." *Id.* (internal quotations and

citations omitted). A conviction for entering the United States, in violation of 8 U.S.C. § 1326, therefore may not be sustained if the defendant was never free from official restraint.[6] *See id.* at 1366. Rivera argues that since there may have been doubt that Agent Graving continuously observed him from the time of his border-crossing, he may have actually entered the United States and not just attempted to enter. Rivera may well be correct. The question before us, however, is whether this is relevant. We find that it is not. The completion of an entry does not preclude a conviction for attempted entry.

We recently held that "Congress intended to incorporate the well-established common-law meaning of 'attempt' into § 1326." *United States v. Gracidas–Ulibarry,* 231 F.3d 1188, 1190 (9th Cir.2000) (en banc). We therefore look to the common law to decide the issue presented here.

We have addressed a similar issue before. In *Giles v. United States,* 157 F.2d 588 (9th Cir.1946), it was argued that a conviction for attempting to escape from a federal penitentiary could not stand because the defendant had succeeded in his attempt to escape from the federal penitentiary on Alcatraz Island. We rejected this argument, holding that a conviction for attempting to escape is not precluded by a successful escape. *Id.* at 590. Similarly, we see no reason why a successful entry should preclude a conviction for attempted entry, in violation of section 1326. It could be argued, however, that our decision in *Giles* was based on the statutory language at issue in that case and not on the common law definition of "attempt."[7]

---

6. The offense of attempting to enter the United States, however, does not require that the defendant be free from official restraint. *United States v. Leos–Maldonado,* 302 F.3d 1061, 1062 (9th Cir.2002). Rivera attempts to expand on our holding in *Leos.* Not only is

freedom from official restraint not a requirement for a conviction for attempted entry, Rivera argues, but freedom from official restraint precludes any such conviction.

7. The statute at issue in *Giles* declared that "any person who escapes or attempts to es-

We therefore look to how other jurisdictions have considered the issue of whether failure to succeed is an element of an attempt crime.[8]

The vast majority of American jurisdictions reject the position that a conviction for an attempt crime is precluded by evidence of a completed offense. *See Lightfoot v. State,* 278 Md. 231, 233–234, 360 A.2d 426 (1976) (collecting authorities on the subject). In *Lightfoot,* the Maryland Court of Appeals dealt with a defendant who argued that he could not be convicted of *attempted* armed robbery because the "evidence clearly establish[ed] a consummated armed robbery." *Id.* at 231, 360 A.2d 426. The court agreed with the majority of jurisdictions and concluded that "failure to consummate the crime is not an indispensable element of criminal attempt." *Id.* at 238, 360 A.2d 426.[9] The decisions from the states in our circuit that squarely address the issue have all come out the same way.[10] All of the decisions

cape [from federal custody] shall be guilty of an offense." *Giles,* 157 F.2d at 589 n. 1.

**8.** Some of our cases have suggested in dicta that failure is an element of an attempt crime. *See, e.g., United States v. Quijada,* 588 F.2d 1253, 1254 (9th Cir.1978) (approving of a jury instruction stating that "failure to consummate a crime" is an element of an attempt crime).

**9.** As our decisions hold that we are to look to the common law when construing the term "attempt" in section 1326, we find the views of the Maryland courts especially persuasive. "The inhabitants of Maryland are constitutionally entitled to the common law of England." *State v. Canova,* 278 Md. 483, 486, 365 A.2d 988 (1976) (citing the Fifth Article of the Maryland Declaration of Rights).

To support its proposition that an attempt conviction can derive from a completed crime, *Lightfoot* cited a plethora of cases from different jurisdictions, including nine that preceded the enactment of section 1326 in 1952. *Lightfoot,* 360 A.2d at 428 & n. 3. Rivera argues that the common law of attempt in 1952 required a failure to complete the underlying crime and that our decision in *Gracidas–Ulibarry,* 231 F.3d at 1190, compels reading the statute to incorporate this purportedly well-established meaning of attempt from a half-century ago. Assuming without deciding that Rivera's methodology is legally correct, we find no merit in his argument because Rivera has not shown that the common law of attempt in 1952 was well-established in the form that he claims.

The only case that Rivera cites to support his position in fact endeavors to explain why many American common law jurisdictions did *not* establish "the rule of no conviction for attempt when shown to be successful," concluding "that the rule that a defendant charged with an attempt must be acquitted if shown to have committed the full offense has today no reasonable basis and should be rejected." *United States v. Fleming,* 215 A.2d 839, 841 (D.C.1966) (noting that the rule "was due to the general English doctrine of merger [of misdemeanor in felony] and not to any unusual requirement in the law of attempt.... The English doctrine of merger of offenses has never been fully accepted in this country, particularly in modern times." (citing *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946))). Rivera has not overcome the substantial weight that this analysis of American common law and the earlier cases cited in *Lightfoot* deserve to be accorded. His theory of the common law of attempt was therefore not well-established in 1952.

**10.** *See State v. McCurdy,* 15 Ariz.App. 227, 228, 487 P.2d 764 (1971); *State v. Benson,* 91 Mont. 21, 25, 5 P.2d 223 (1931); *Pagliaro v. State,* 89 Nev. 445, 446, 514 P.2d 869 (1973); *State v. Harvey,* 119 Ore. 512, 515, 249 P. 172 (1926); *State v. Rowe,* 60 Wash.2d 797, 798, 376 P.2d 446 (1962). California cases are also in accord. *E.g. People v. Johnson,* 21 Cal.App.3d 235, 247, 98 Cal.Rptr. 393 (1971); *People v. Horn,* 25 Cal.App. 583, 592, 144 P. 641 (1914). No case from California, however, has specifically addressed the issue since the addition of Penal Code section 21a, which could be read to imply that failure is an element of attempt. Cal. Pen.Code § 21a ("An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but *ineffectual* act done towards its commission.") (emphasis added).

from our sister circuits to address the issue also agree that failure to complete an offense is not an element of an attempt crime. *See United States v. York,* 578 F.2d 1036, 1040 (5th Cir.1978) ("[P]roof that a crime had been completed does not absolve the defendants of the attempt."); *United States v. Malasanos,* 472 F.2d 642, 643 (7th Cir.1973) (per curiam) ("[N]either common sense nor precedent supports success as a defense to a charge of attempt.").

The Model Penal Code also rejects the argument advanced by Rivera here. MODEL PENAL CODE § 1.07 cmt. 5, at 132 (1985) ("[T]he attempt provision of the Code does not require proof of failure as an element of the attempt."). Other secondary authorities agree. *See* 21 AM. JUR.2D *Criminal Law* § 175 (1998) (definitions of attempt in treatise "do not require, as an element of attempt, that a perpetrator fail in his attempt"); 2 Wayne R. La-Fave, & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.3, at 59 (1986) (noting that there is no modern rationale for rule that failure is an element of attempt and "[t]hus, many recent cases have held that a defendant may be convicted of the attempt even if the completed crime is proved"). *But see* 4 Charles E. Torcia *Wharton's Criminal Law,* § 694, at 587–88 (15th ed. 1996) ("Although there is authority to the contrary, the failure to commit the target crime is an essential element of an attempt.").

Were the rule otherwise, it would lead to absurd results. The instant case perfectly illustrates the problems that would arise under the rule proposed by Rivera. Suppose we adopted the rule proposed by Rivera and remanded for retrial. Also suppose that the government is allowed to amend its indictment to charge Rivera with both attempting to enter the United States and entering the United States. Here, there seems to be reasonable doubt as to whether or not Rivera succeeded in entering the United States. Because of such doubt, under the rule Rivera proposes we adopt, he would probably be entitled to an acquittal on *both* charges. Since it could not be said beyond a reasonable doubt that Rivera entered the United States, he would be entitled to acquittal on the entry charge. Since it could not be said beyond a reasonable doubt that Rivera had not entered the United States, he similarly would be entitled to an acquittal on the attempted entry charge. "In other words the position would be that defendant is entitled to a verdict of not guilty if there is doubt in regard to success or failure although no doubt that the attempt was made." Rollin M. Perkins, *Criminal Attempt and Related Problems,* 2 U.C.L.A. L. REV. 319, 321 (1955). Such a rule would allow defendants to avoid criminal sanction altogether when there clearly is no doubt that they engaged in criminal conduct. We refuse to adopt such a nonsensical rule.

[5] We accordingly hold that a person may be convicted of an attempt to commit a crime even though that person may have actually completed the crime. Any dicta to the contrary is disavowed. The fact that an alien may have completed an entry into the United States does not, in any way, preclude a conviction for attempted entry.[11] The district court there-

___

We have been unable to locate cases from Alaska, Idaho or Hawaii where the issue was the subject of appellate litigation.

**11.** At oral argument and in a later 28(j) letter, the government took the position that it would be constitutionally permissible to con-

vict a person of entry *and* attempted entry under section 1326. Although the issue is not presented to us, we very much doubt there is *any* merit to the government's position. *See York,* 578 F.2d at 1040 ("Unlike conspiracy, the prosecution may not obtain convictions

fore did not err by refusing to instruct the jury that failure to complete an entry is an element of attempted entry under 8 U.S.C. § 1326.

## B. The Dispatch Tape

Rivera argues that the district court erred by refusing to sanction the government for its failure to preserve a dispatch tape. The tape at issue was an audio tape of the conversation between Agents Graving and Jacobs on the night Rivera was arrested.

 When potentially exculpatory evidence is destroyed, the government violates a defendant's right to due process if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993) (internal quotations and citations omitted). Rivera argues that the tape could have shown that Rivera had completed an entry into the United States because Agent Graving may not have continually observed him from the time of his border crossing to the time of his arrest. As discussed above, this is not relevant to the question of whether or not Rivera was guilty of attempting to enter the United States in violation of section 1326. Thus, it is not clear that there was any exculpatory value to the tape. In any event, even if there were exculpatory value to the tape, there was clearly comparable evidence available to Rivera. Both Agents Graving and Jacobs were available to testify, and

did testify, about whatever conversations were on the tape. The government therefore did not violate Rivera's due process rights by destroying the dispatch tape.

 Even if there was little or no exculpatory value to the dispatch tape, Rivera argues that the government still violated his discovery request when it did not produce the tape.[12] Assuming, *arguendo*, that the government violated Rivera's discovery request by not producing the tape when it still existed, such a violation did not encroach on Rivera's substantial rights because of the dubious relevancy of the conversations recorded on the tape. *Amlani*, 111 F.3d at 712. The district court therefore acted well within its discretion by refusing to sanction the government.

### CONCLUSION

The district court correctly refused to instruct the jury that failure to enter the United States is an element of attempting to enter the United States in violation of 8 U.S.C. § 1326. The district court did not abuse its discretion by refusing to sanction the government for any discovery violations regarding the production of the dispatch tape containing conversations between Agents Graving and Jacobs on the night of Rivera's arrest. The government did not violate Rivera's due process rights by destroying the dispatch tape. We therefore **AFFIRM** Rivera's conviction.

---

for both the completed offense and the attempt if the attempt has in fact been completed. The attempt is an offense included in the completed crime, and, therefore, cannot support a separate conviction and sentence."); *Giles*, 157 F.2d at 590 (stating that prosecu-

tion for attempt bars a prosecution for completed offense).

12. The tape may have still existed at the time Rivera made a discovery request for "dispatch or any other tapes."