
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**JOHN DANIEL NEGO,**
Defendant-Appellant.

Supreme Court Case No.: CRA19-008
Superior Court Case No.: CF0014-19

## OPINION

## Cite as: 2021 Guam 3

Appeal from the Superior Court of Guam
Determined on the briefs submitted January 10, 2020
Hagåtña, Guam

Appearing for Defendant-Appellant:
Zachary C. Taimanglo, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Courtney Leigh Scalice, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913


**E-Received**
5/25/2021 4:47:46 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

**[1]** Defendant-Appellant John Daniel Nego appeals his convictions for: Theft of a Motor Vehicle by Deception; Forgery; Impersonation; Terroristic Conduct; and two counts of Attempted Violation of a Court Order. On appeal, Nego argues the trial court abused its discretion in (1) admitting evidence belatedly disclosed; and (2) instructing the jury it could convict on an attempt offense even if it concluded that the target crime was completed. For the reasons below, we affirm the judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**[2]** Nego was indicted for: Theft of a Motor Vehicle by Deception; Forgery; Impersonation; two counts of Terroristic Conduct; two counts of Attempted Violation of a Court Order; Theft by Deception; and Theft of Property. Nego asserted his right to a speedy trial, and the trial court thereafter issued a scheduling order requiring that all mutual discovery be exchanged under 8 GCA §§ 70.10 and 70.25.

**[3]** Following his assertion, the trial court granted Nego's motion to sever the charges in his indictment. The trial court divided the charges in the indictment and grouped them according to the dates of the alleged offenses. Trial for the charges of Theft of Property and Theft by Deception ("October Offenses") was scheduled first, followed by a trial for Forgery, Impersonation, and Theft of a Motor Vehicle by Deception ("November Offenses"), and concluding with a trial on the two counts of Terroristic Conduct and two counts of Attempted Violation of a Court Order ("December Offenses"). Subsequently, on the People's motion, the October Offenses were dismissed without prejudice, along with one count of Terroristic Conduct, which was part of the December Offenses.

**[4]**     Before the commencement of jury selection for the trial on the November Offenses, Nego objected to using approximately 100 pages of discovery disclosed the previous day. The disclosure was made after the discovery deadline. Rather than ruling on the admissibility of the belated discovery materials, the trial court determined that it would consider the admissibility of the materials as they arose with the evidence presented during trial.

**[5]**     During the trial on the November Offenses, which included the charge of Theft of a Motor Vehicle by Deception, the People sought to introduce five photographs into evidence. The photographs, which were part of the belated discovery materials, depicted the state of a vehicle (for the theft crime at issue) when it was discovered by law enforcement. In explaining the reason for the belated disclosure, the prosecutor stated that a couple of days before jury selection, the Office of the Attorney General ("OAG") was informed by Detective Ricky Camacho of a supplemental police report that had mistakenly not been uploaded to the Guam Police Department's ("GPD") Law Enforcement Records Management System. The prosecutor further explained the report referenced photographs of the vehicle, which the OAG never received from GPD. According to the prosecutor, once the materials were obtained by the OAG, including the photographic evidence from the Guam Crime Lab, they were immediately disclosed to defense counsel. The trial court admitted the photographic evidence over defense counsel's objection. After trial on the November Offenses, Nego was found guilty of Forgery, Impersonation, and Theft of a Motor Vehicle by Deception.

**[6]**     The trial on the December Offenses concerned an attempt crime, specifically, Attempted Violation of a Court Order. While finalizing jury instructions, the People sought to include language in the instruction on the definition of attempt, which stated that a person may be guilty of an attempt crime even if the jury concluded the target crime was completed. The trial court

agreed with the People's proposal and approved the following instruction over defense counsel's objection:

### 5H.    "ATTEMPT" DEFINED

A person is guilty of an *attempt* to commit a crime when, with intent to engage in conduct which would constitute such a crime were the circumstances as he believes them to be, he performs or omits to perform an act which constitutes a substantial step toward commission of the crime. The Defendant may be guilty of attempt even if you conclude that he actually completed the crime.

Record on Appeal ("RA"), tab 60 at 46 (Jury Instrs., Apr. 3, 2019). The jury found Nego guilty of Terroristic Conduct and two counts of Attempted Violation of a Court Order.

[7]    Nego was sentenced to five-year terms of imprisonment for Forgery, Impersonation, and Theft of a Motor Vehicle by Deception, and one-year terms for each count of Attempted Violation of a Court Order, to be served concurrently. He was also sentenced to a five-year term for Terroristic Conduct, to be served consecutively with his other convictions. Following entry of judgment, Nego timely appealed.[1]

## II.  JURISDICTION

[8]    We have jurisdiction over appeals from a final judgment of conviction rendered in the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-12 (2021)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[9]    We review sanctions imposed for discovery violations for abuse of discretion. *See People v. Martinez*, 2017 Guam 23 ¶ 13.

---

[1] The briefings in this appeal by both parties contain errors that reference unrelated facts and circumstances. *See* Appellant's Br. at 10 (Oct. 14, 2019) (referencing prejudicial evidence of robberies and "Instruction 3G," which have no relation to this appeal); Appellee's Br. at 1, 5 (Dec. 13, 2019) (referencing an unknown individual: "Morales claims"; "Morales guilty"). We warn counsels to proofread and correct errors in their briefs before filing; otherwise, they may be sanctioned for non-compliance with the Guam Rules of Appellate Procedure. *See* Guam R. App. P. 21.1.

**[10]** When an objection to a particular jury instruction was made during trial, we "view the instruction in the context of the delivered jury instructions as a whole and reverse only for an abuse of discretion." *People v. Songeni*, 2010 Guam 20 ¶ 9. "[W]e review jury instructions *de novo* when they are challenged as a misstatement of the law." *People v. Diego*, 2013 Guam 15 ¶ 9 (alteration in original) (quoting *Guam Top Builders, Inc. v. Tanota Partners*, 2012 Guam 12 ¶ 9).

## IV.  ANALYSIS

**[11]** Nego argues the trial court abused its discretion by admitting photographic evidence belatedly disclosed to defense counsel. *See* Appellant's Br. at 10 (Oct. 14, 2019). He further maintains that it was reversible error for the trial court to instruct the jury it could convict on an attempt charge even if it concluded that the target offense was completed. *Id.* at 16. We address each of these arguments in turn.

### A. The Trial Court Did Not Abuse its Discretion in Admitting Evidence that Arose from Belated Discovery Disclosures

**[12]** Nego contends the trial court abused its discretion in allowing photographic evidence despite the prosecution's failure to disclose such material in a timely matter. *Id.* at 10-11. He further argues that the photographic evidence admitted by the trial court, which comprised five photos of the vehicle that is the subject of the theft offense, caused him significant prejudice. *Id.* at 14. Nego, however, does not explain in any significant way the prejudice he suffered because of the belated disclosure. Given the factors we outlined in *People v. Tuncap*, 1998 Guam 13 ¶ 25, for analyzing discovery violations, the trial court did not abuse its discretion in admitting the photographic evidence.

**[13]** Discovery in criminal matters is governed by Chapter 70 of Title 8 of the Guam Code Annotated. *See* 8 GCA §§ 70.10-70.80 (2005). Under 8 GCA § 70.10(a), the People must, upon

the court's order, disclose to defense counsel "material and information within [the People's] possession or control, the existence of which is known, or by the exercise of due diligence may become known to the [People]." 8 GCA § 70.10(a). This material includes "any book, paper, document, photograph or tangible object, which the [People] intend[] to use [at] trial." *Id.* § 70.10(a)(4). The People's obligation under our jurisdiction's criminal discovery statute extends "to any material information in the possession or control of members of [the prosecution's] staff and any other persons who have participated in the investigation or evaluation of the case and who either regularly report or with reference to th[e] case have reported to [the OAG]." *Id.* § 70.10(b).

[14] Here, the trial court ordered that all mutual discovery be exchanged under 8 GCA § 70.10 at least a month before jury selection. The disputed discovery material, including the photographic evidence used at trial, was not disclosed to defense counsel until the day before jury selection for trial on the November Offenses. As these facts are undisputed, the materials were disclosed in violation of the discovery obligations in the scheduling order.

[15] When there is a violation of the discovery obligations of the parties, "the court must determine whether the sanction employed [by the trial court] to remedy the infraction was appropriate." *Martinez*, 2017 Guam 23 ¶ 14 (quoting *Tuncap*, 1998 Guam 13 ¶ 23). This requires that the sanction chosen be "proportionate to the misconduct" and "affect the evidence at trial and the merits of the case as little as possible." *Tuncap*, 1998 Guam 13 ¶¶ 23-24 (citations omitted). A range of sanctions can be imposed for discovery violations, including granting a continuance, prohibiting the party from introducing the belated disclosures as evidence, holding counsels in contempt (including the Attorney General and/or Chief Prosecutor), imposing fines, dismissing the indictment, or issuing any other order the trial court considers just under the circumstances. *See People v. Naich*, 2013 Guam 7 ¶¶ 27-32. Because

the goal of sanctions is to get "prompt and full compliance with the court's discovery orders," the court should "impose the least severe sanction that will accomplish the desired result [of] prompt and full compliance" with the parties' discovery obligations. *Tuncap*, 1998 Guam 13 ¶ 24 (quoting *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982)).

[16]    We address the appropriateness of imposed sanctions for discovery violations using the factors set forth by the Fifth Circuit in *United States v. Sarcinelli*, 667 F.2d 5 (5th Cir. 1982), and adopted in *Tuncap*.[2]  *See Martinez*, 2017 Guam 23 ¶ 15.  These factors are: (1) the reasons why the disclosure was not made; (2) the extent of prejudice, if any, to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant circumstances. *Id.* (citing *Naich*, 2013 Guam 7 ¶ 31). Upon application of these factors, the trial court did not abuse its discretion in admitting the photographic evidence—which were a part of the belated disclosures—over Nego's objection.  Rather, the trial court considered the *Sarcinelli* factors and properly admitted the evidence.[3]

### 1.  Reasons why disclosure was not made

[17]    During trial, the prosecution explained to the court that the belated disclosures resulted from a mistake by GPD in failing to upload a supplemental police report in its records management system that referenced photographs the OAG never received.  The prosecution

---

[2] The factors we adopted in *Tuncap* are instructive here in determining whether the trial court abused its discretion in assessing violations of the discovery order because Nego raised the discovery violation prior to trial, and while the trial court imposed no sanction and admitted the disputed evidence, it reached its conclusion by applying the *Tuncap* factors.  *See People v. Martinez*, 2017 Guam 23 ¶ 14 ("Where a discovery violation occurs, 'the court must determine whether the sanction employed to remedy the infraction was appropriate.'" (quoting *Tuncap*, 1998 Guam 13 ¶ 23)).  Furthermore, a trial court may consider a wide range of sanctions for proven discovery violations, including imposing no sanction at all.  *See People v. Ayala*, 1 P.3d 3, 48-49 (Cal. 2000) (stating that "a trial court may, in the exercise of its discretion, 'consider a wide range of sanctions' in response to the prosecution's violation of a discovery order," but finding no abuse of discretion in trial court's refusal to impose a sanction (quoting *People v. Wimberly*, 7 Cal. Rptr. 2d 152, 163 (Ct. App. 1992)).

[3] The trial court, in admitting the photographic evidence, reserved the right to sanction the government at a later time for its belated disclosures.  *See* Transcript ("Tr.") at 84-85 (Jury Trial, Mar. 7, 2019) ("I . . . reserve for the Court to consider more fully what sanctions would be appropriate to discourage the failure of discovery [and encourage] compliance with discovery orders . . . .").

further stated that it had made a prior request for photographs to GPD but was told that none existed. Once the photographs were recovered by the OAG, they were immediately disclosed to defense counsel. The reasons for the belated disclosure were also explained in the People's brief. *See* Appellee's Br. at 9, 17 (Dec. 13, 2019). After considering the reasons proffered by the prosecution, the trial court determined there was no bad faith by the People in their belated disclosure of discovery materials. *See* Transcript ("Tr.") at 84-91 (Jury Trial, Mar. 7, 2019) ("[T]here is no bad faith found by the Court . . . ."). This finding was not an abuse of discretion.

[18]    In both *Naich* and *Martinez*, similar mistakes were made by GPD in failing to provide the OAG with complete files and records. In *Martinez*, the court determined there was no bad faith by the prosecutor for the discovery violation when GPD failed to provide the OAG with discovery related to a previously undisclosed fingerprint analysis when such items were immediately disclosed to defense counsel upon receipt. 2017 Guam 23 ¶ 17. And in *Naich*, we concluded there was no bad faith when GPD failed to notify the OAG of new information added to the defendant's file and when the prosecutor in charge did not periodically check with GPD for new disclosures due to military duty. 2013 Guam 7 ¶ 35.

[19]    Similarly, nothing in the record here suggests the belated disclosures resulted from bad faith by the prosecution. Nego also does not contend, nor does the record show, that there was any purposeful decision by the prosecution to withhold evidence, to hide the belated disclosures, or to willfully violate or evade the trial court's scheduling order by waiting to provide the belated disclosures. Rather, the reason for the belated disclosures arose from a mistake by GPD in failing to upload a supplemental police report to its records management system. Nego did not dispute or challenge the reasons for the belated disclosure, only suggesting the belated disclosure resulted from discovery problems that plague GPD and the OAG, without articulating those problems specifically. *See* Appellant's Br. at 13. Based on the record, the errors here were not

made in bad faith, and the prosecution immediately alerted counsel and turned over the belated

disclosures as soon as they knew of their existence.

### 2. Extent of prejudice

[20]     Though not stated explicitly, Nego suggests that he suffered prejudice to his right to a fair

trial because of the belated disclosures.  *See* Appellant's Br. at 14.  Without explaining any

specific prejudice he would suffer, Nego states he was "forced to choose from among his rights:

the right to a speedy trial, the right to counsel, and the right to be apprised of the evidence

against him" because of the belated discovery disclosures.  *Id.* at 15.  The argument that Nego

was forced to choose among certain rights afforded to a defendant is baseless, and Nego does not

sufficiently articulate the harm or prejudice which impacted the specific rights he suggests were

affected.

[21]     Here, the trial court asked Nego about the prejudice he would suffer and determined there

was "no demonstration of prejudice to [Nego] that cannot otherwise already have existed."  Tr. at

81, 84 (Jury Trial, Mar. 7, 2019).  Such a finding was reasonable and valid as the photographic

evidence admitted during trial was inconsequential.  The trial court held that the disputed

photographs of the vehicle were supported by testimony already before the jury.  Additionally,

the photographs provided only visual context as to how the vehicle appeared when it was

discovered by law enforcement after the vehicle had already been described by witnesses in prior

trial testimony.

[22]     Nego's argument he suffered prejudice from admission of the photographic evidence is

also cursory, as he articulates no specific arguments or reasons as to why the photographic

evidence was prejudicial and affected his rights.  Rather, the photographic evidence constituted a

small part of Nego's trial given the other evidence that explained the vehicle and linked Nego to

the crime, including testimony by law enforcement officials who saw the vehicle when

discovered and testimony from the owner of the vehicle. Even if the photos were consequential or had some exculpatory value, Nego does not suggest any different strategic actions he might have taken had he been given time to prepare and use the photographic evidence. As Nego fails to articulate how he believes he was prejudiced and because there was other significant inculpatory evidence at trial, we cannot say that the admission of the photographic evidence was prejudicial.

### 3. Feasibility of rectifying any prejudice by a continuance

[23] The trial court could have granted a continuance to rectify any prejudice Nego might have suffered as a result of the belated disclosures. The record shows that Nego asserted his right to speedy trial under 8 GCA § 80.60 (2005). The trial court set trial three days before the expiration of the statutory speedy trial time limit. Nego appears to concede that a continuance would not have cured the prejudice because it "would have given rise to dismissal pursuant to Guam's speedy trial statute." Appellant's Br. at 15. This is not necessarily true; the court could have granted a short continuance while still respecting Nego's speedy trial rights. However, nothing in the record indicates that Nego requested additional time to review the belated disclosures. *Cf.* Appellant's Reply Br. at 3 (Jan. 10, 2020) ("Nego had no desire for a continuance of trial and therefore did not seek a continuance.").

### 4. Other relevant circumstances

[24] In citing to *Martinez*, *Naich*, and *Tuncap*, Nego asks that we rule in his favor "to shore up the strength of Guam's criminal discovery statute and correct the still-endemic issues related to late disclosure of discovery." Appellant's Br. at 15-16. Though the court is mindful of the problems regarding discovery violations in this jurisdiction, it is not the court's place to impose sanctions or policies on GPD or the OAG to rectify "cumulative" issues relative to discovery violations. The inquiry over the appropriateness of a sanction imposed by a trial court for a

discovery violation and whether that sanction amounts to an abuse of discretion is case-specific. The question before the court is whether the trial court, under the circumstances, abused its discretion in admitting the belated discovery material. Applying the factors in *Tuncap*, the trial court did not abuse its discretion.

[25]    While "it is imperative that the People be more diligent in seeking to comply with discovery requests and orders, even if this requires proactive efforts," *Naich*, 2013 Guam 7 ¶ 36, it would be outside our jurisdiction to fashion a remedy to resolve the "endemic" problems of discovery violations Nego refers to, especially when those problems are not in the record before us, *see id.* ¶¶ 43-45. And as we have stated in *Naich*, the trial courts are the more appropriate venue to rectify and impose sanctions for specific and/or endemic discovery violations. *See id.* ¶ 44 ("Trial courts are in the best position to judge whether discovery violations are in fact systematic and all-too-common.").

[26]    Though the trial court did not abuse its discretion in admitting the belated discovery materials, we again remind the prosecution of their statutory obligation to timely disclose materials covered under our criminal discovery statutes. *See* 8 GCA §§ 70.10-70.80; *see also Martinez*, 2017 Guam 23 ¶ 17; *Naich*, 2013 Guam 7 ¶ 36; *Tuncap*, 1998 Guam 13 ¶ 32. Such disclosures "extend to any material information in the possession or control of members of [the prosecution's] staff and any other persons who have participated in the investigation or evaluation of the case and who either regularly report or with reference to th[e] case have reported to [the OAG]." 8 GCA § 70.10(b).

## B. The Trial Court Did Not Abuse its Discretion in Instructing the Jury on the Definition of Attempt

[27]    Nego argues the trial court abused its discretion and misstated the law when it instructed the jury as to the definition of attempt by including language which read that "[t]he Defendant

may be guilty of attempt even if you conclude that he actually completed the crime." RA, tab 60 at 46 (Jury Instrs.). In permitting this instruction, Nego contends "the jury was instructed to contemplate a method of proof for which Nego was never put on notice" and that such language was "not contemplated in Guam law." Appellant's Br. at 17-18. Based on our review of the instruction, the record, and relevant case authority, both arguments lack merit.

[28] The trial court instructed the jury on the following definition of attempt:

### 5H.     "ATTEMPT" DEFINED

A person is guilty of an *attempt* to commit a crime when, with intent to engage in conduct which would constitute such a crime were the circumstances as he believes them to be, he performs or omits to perform an act which constitutes a substantial step toward commission of the crime. The Defendant may be guilty of attempt even if you conclude that he actually completed the crime.

RA, tab 60 at 46 (Jury Instrs.). This definition concerned the offense of Attempted Violation of a Court Order, the elements of which were described to the jury. *Id.* at 48, 50. The elements for Attempted Violation of a Court Order, as described in the jury instructions, also mirrored the description of the offense in the indictment. RA, tab 6 at 3-4 (Indictment, Jan. 17, 2019). Thus, the jury was not instructed, and the prosecution never asked, that the jury contemplate finding Nego guilty of the completed offense related to the attempt crime. While the evidence developed during trial may have led jurors to believe the attempt crime was completed, the jury was not instructed, as Nego argues, on a different method of proof other than what he was put on notice for in the indictment.

[29] Next, we consider the appropriateness of the disputed language in Instruction 5H, which states that "[t]he Defendant may be guilty of attempt even if you conclude that he actually completed the crime." RA, tab 60 at 46 (Jury Instrs.). Nego's argument that the language was a misstatement of the law raises whether there could be a conviction of an attempt crime even

when the target offense was shown to have been completed, an issue of first impression for the court.

[30]     Other jurisdictions have already resolved this question. The Ninth Circuit in *United States v. Rivera-Relle* acknowledged that "[t]he vast majority of American jurisdictions reject the position that a conviction for an attempt crime is precluded by evidence of a completed offense." 333 F.3d 914, 920 (9th Cir. 2003). There, the court explained that it was nonsensical to adopt the position that a defendant can avoid criminal sanction on an attempt crime when there is no doubt that the individual engaged in criminal conduct by completing the target offense. *Id.* at 921. Such a scenario would produce the "anomalous situation of a defendant going free 'not because he was innocent, but for the very strange reason, that he was too guilty.'" *United States v. York*, 578 F.2d 1036, 1039 (5th Cir. 1978) (quoting *United States v. Fleming*, 215 A.2d 839, 840-41 (D.C. 1966)). Accordingly, the Ninth Circuit held that "a person may be convicted of an attempt to commit a crime even though that person may have actually completed the crime." *Rivera-Relle*, 333 F.3d at 921. This holding corresponds with the decisions of other courts. *See York*, 578 F.2d at 1040 ("[P]roof that a crime had been completed does not absolve the defendants of the attempt."); *United States v. Malasanos*, 472 F.2d 642, 643 (7th Cir. 1973) (per curiam) ("[N]either common sense nor precedent supports success as a defense to a charge of attempt . . . .").

[31]     The proposition that a conviction for an attempt crime is precluded if there is evidence of a completed offense has also been rejected by jurisdictions, like ours, which have adopted portions of the Model Penal Code. *See State v. Mathis*, 221 A.2d 529, 533 (N.J. 1966) ("We can understand that there may be situations in which a jury finding of an 'attempt' is palpably a compromise verdict, but we see no sensible end to be served by the bald proposition that when the State alleges only an 'attempt,' there must be an acquittal if the evidence shows that

defendant went further than the State charged."); *People v. Williams*, 465 N.Y.S.2d 648, 652 (Crim. Ct. 1983) ("[C]onviction for an attempt is no longer precluded by the fact that the crime was completed.").

[32]    In support of his argument that Instruction 5H is a misstatement of law, Nego cites only *Lightfoot v. State*, 360 A.2d 426, 427-28 (Md. 1976), a case from the Court of Appeals of Maryland that listed authorities from those jurisdictions that adopted the position there can be no conviction for attempt if there is uncontradicted evidence establishing the target offense.  This case does not help Nego as it eventually sided with the majority of jurisdictions in holding that an attempt conviction may stand even if evidence establishes the target offense was completed. *Id.* at 430.  In *Lightfoot*, the court stated the following regarding attempt crimes:

> In a sense the commission of an offense involves an attempt to commit it.  It may not be a degree of the main offense, nor be . . . included therein, so as to require the court to charge with reference thereto in every case where the commission of an offense is charged.  But, as the greater includes the less, it is manifest that in every case where an attempt is charged proof of the actual commission of the offense establishes the attempt.  If the offender actually commits the offense, he necessarily attempted to do it . . . .

*Id.* at 428 (quoting *State v Fox*, 159 N.W.2d 492, 495 (Iowa 1968)).  This description of the interplay between an attempt crime and the completed offense aptly portrays why it would be inconceivable for this court to adopt the position that the trial court erred when it instructed the jury that Nego could be found guilty of the attempt offense charged even when overwhelming evidence showed that the attempt offense was completed.  The instruction to the jury that "[Nego] may be guilty of attempt even if [it] conclude[d] that he actually completed the crime," RA, tab 60 at 46 (Jury Instrs.), provided the jury only a way to reconcile any confusion it may have had if the evidence demonstrated that Nego completed the target crime even when he was charged only as to attempt.

**[33]**     There being no misstatement of law, the trial court did not abuse its discretion in instructing the jury that "[Nego] may be guilty of attempt even if [it] conclude[d] that he actually completed the crime." *Id.*  And given the authorities cited above, we adopt the majority rule in *Rivera-Relle* and hold that a person may be found guilty of an attempt crime even though the evidence developed at trial demonstrates that the person may have actually completed the target offense. *See* 333 F.3d at 921.

## V.  CONCLUSION

**[34]**     We **AFFIRM** the judgment of conviction.


|                           /s/                           |                          /s/                          |
| :-----------------------------------------------------: | :---------------------------------------------------: |
|                   ROBERT J. TORRES                      |                KATHERINE A. MARAMAN                    |
|                   Associate Justice                     |                   Associate Justice                   |


|                          /s/                          |
| :---------------------------------------------------: |
|                 F. PHILIP CARBULLIDO                   |
|                    Chief Justice                      |