**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JUAN RESENDIZ-PONCE,
         *Defendant-Appellant.*

No. 04-10302

D.C. No.
CR-03-00810-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted
June 14, 2005—San Francisco, California

Filed October 11, 2005

Before: Alfred T. Goodwin, Thomas M. Reavley,* and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Goodwin;
Concurrence by Judge Reavley

---

*The Honorable Thomas M. Reavley, Senior United States Circuit
Judge for the Fifth Circuit, sitting by designation.

13977

## COUNSEL

Atmore L. Baggot, Apache Junction, Arizona, for the defendant-appellant.

Raynette M. Logan, Joseph Koehler, Assistant U.S. Attorneys, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

GOODWIN, Circuit Judge:

Juan Resendiz-Ponce, a native and citizen of Mexico, challenges his conviction and sentence for attempting to reenter the United States after having been previously deported subsequent to committing an aggravated felony, pursuant to 8 U.S.C. § 1326(a), (b)(2). He argues that (1) the indictment did not adequately allege an overt act; (2) his Miranda rights were violated; (3) the judge erroneously rejected his proffered jury instructions; and (4) his sentence violates the Sixth Amendment. Because the indictment was insufficient and should be dismissed, we do not reach his remaining claims.

*Facts and Procedural History*

Resendiz-Ponce entered the United States illegally in 1988, and was ordered deported on March 12, 1997. He reentered the United States illegally in July, 2002. On August 28, 2002, he was convicted of kidnaping his common-law wife and sentenced to 45 days in county jail. On October 15, 2002, while still in county jail, he was questioned by an INS agent and admitted that he was an alien, that he was previously deported, and that he had not sought permission to re-enter from the Attorney General. He was deported later that same day.

In June 2003, Resendiz approached a port of entry at the U.S./Mexican border on foot. Resendiz presented photo identification to the border agent, claiming to be a legal resident. This identification belonged to Antonio Resendiz, Juan's cousin. Because Resendiz did not look like the tendered photo, the agent directed him to a secondary inspection area, where he was questioned. In due course, he was indicted for attempting to reenter the United States in violation of 8 U.S.C. § 1326(a). The indictment reads as follows:

On or about June 1, 2003, JUAN RESENDIZ-PONCE, an alien, knowingly and intentionally attempted to enter the United States of America at or near San Luis in the District of Arizona, after having been previously denied admission, excluded, deported, and removed from the United States at or near Nogales, Arizona, on or about October 15, 2002, and not having obtained the express consent of the Secretary of the Department of Homeland Security to reapply for admission.

In violation of Title 8, United States Code, Sections 1326(a) and enhanced by (b)(2).

At trial, Resendiz moved to suppress the statements he made to the INS agent while in jail in 2002 because he did not receive Miranda warnings, to dismiss the indictment because it did not allege an overt act, and to strike a portion of the indictment related to 8 U.S.C. § 1326(b)(2) because the indictment did not allege that his prior deportation occurred subsequent to his prior conviction. The district court denied these motions. Resendiz also requested a jury instruction that would have told the jury that the government must prove that Resendiz performed the overt act of successfully reentering the United States. The court denied this request. Resendiz was convicted. At his sentencing hearing, the district court determined that he was previously deported and that this deportation occurred subsequent to his conviction for an aggravated felony. Therefore, the statutory maximum for his sentence was increased from 2 years to 20 years, pursuant to § 1326(b)(2). He was sentenced to 63 months, the middle of the applicable guideline range of 57-71 months. This appeal followed.

*Jurisdiction and Standard of Review*

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C.

§ 1291. We review the sufficiency of an indictment *de novo*. *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004).

*Discussion*

**[1]** The crime of attempted unlawful entry into the United States, as defined by § 1326, includes as an essential element that "the defendant committed an overt act that was a substantial step toward reentering . . ." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (*en banc*).[1]

**[2]** The indictment in this case does not explicitly allege an overt act. It charges neither the physical crossing of the border, nor the tendering of the bogus identification card, nor any other fact, as a substantial step toward reentry. Either or both of those acts could have been stated in the indictment. The government argued to the district court that the "overt act is the attempt to enter in this case" and argues on appeal that "the overt act of an attempted entry crime is the entry itself." The first argument is a non-starter. The overt act with which the defendant is charged obviously cannot be identified with the ultimate legal question of guilt or innocence. The second argument can be construed as either (1) the legal claim that a charge of attempted entry necessarily implies that the associated overt act was actual entry, or (2) the factual claim that in this case, the indictment implicitly alleged physical entry and thus identified an overt act. The district court held that "being here is sufficient to advise [Resendiz] . . . of what it is he's charged with," thus apparently endorsing (2), and possibly also endorsing the proposition that any error was harmless and did not prejudice Resendiz. We reject both of these

---

[1]Unlike the separate offense of "being found in" the United States, where failure to allege the overt act of crossing the border (or other overt act) is not a fatal defect, because not an "essential element," the other two § 1326 offenses for which deported aliens may be prosecuted require an overt act to be alleged in the indictment. *Cf. United States v. Bello-Bahena*, ___ F.3d ___ (9th Cir. June 15, 2005).

potential interpretations of the government's remaining argument as a ground for salvaging the defective indictment.

The government relies on dicta from a 1921 decision to argue that the overt act related to an attempted reentry is an actual reentry. *Mills v. United States*, 273 F. 625, 627 (9th Cir. 1921) ("The attempt is in itself . . . the act of crossing the boundary line into the United States."); *quoted in United States v. Corrales-Beltran*, 192 F.3d 1311, 1319-20 (9th Cir. 1999). *Mills* stands only for the proposition that an actual entry is a *possible* means of violating a statute criminalizing attempted entry, not that it is the *only* means and that its occurrence is therefore necessarily implied by an attempt charge. *Id.*; *accord United States v. Rivera-Relle*, 333 F.3d 914, 921 (9th Cir. 2003) ("The fact that an alien may have completed an entry into the United States does not, in any way, preclude a conviction for attempted entry."). Nothing in these cases suggests that an indictment for attempted entry always or even often implies an actual entry.

**[3]** The second interpretation of the government's argument is that the indictment implicitly alleged that Resendiz committed the overt act of physically crossing the border by stating that "[o]n or about June 1, 2003, Juan Resendiz-Ponce . . . intentionally attempted to enter the United States at or near San Luis." On this interpretation, apparently endorsed by the district court, Resendiz' current physical presence in the United States warrants the inference that he physically crossed the border, thus rendering the indictment sufficient. It is true that any facts "necessarily implied" by an indictment are presumptively charged. *See, e.g.*, *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). However, there is an essential logical distinction between what is implied by the *language* of the *indictment* and what is implied by *facts* outside the four corners of the indictment. Neither common knowledge nor appraisal of probabilities will take the place of an omitted but essential allegation.

**[4]** Failure to allege an essential element of the offense is a fatal flaw not subject to mere harmless error analysis. *See, e.g.*, *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) ("if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal"). The purpose of this rule is to secure the basic institutional purpose of the grand jury, by ensuring that a defendant is not "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979); *quoted in Du Bo*, 186 F.3d at 1179. As the Supreme Court has explained, this purpose has its constitutional roots in the Fifth and Sixth Amendments and historical roots in the English common-law tradition. *Russell v. United States*, 369 U.S. 749, 770 (1962). While this protection may not extend to incidentals and details unnecessary to a conviction, an overt act that is a substantial step toward underlying offense is at the very core of an attempt charge. *Cf. United States v. Hinton*, 22 F.3d 664, 672 (9th Cir. 2000) (holding that a slight discrepancy in dates and locations between the grand jury indictment and the facts proved at trial was "not significant"). The defendant has a right to be apprised of what overt act the government will try to prove at trial, and he has a right to have a grand jury consider whether to charge that specific overt act. Physical crossing into a government inspection area is but one of a number of other acts that the government might have alleged as a substantial step toward entry into the United States. The indictment might have alleged the tendering a bogus identification card; it might have alleged successful clearance of the inspection area; or it might have alleged lying to an inspection officer with the purpose of being admitted. Instead, the indictment merely alleged that Resendiz "attempted to enter" the United States, which simply repeats the ultimate charge against him. A grand jury never passed on a specific overt act, and Resendiz was never given notice of what specific overt act would be proved at trial.

**[5]** Relying on *Du Bo*, we reversed a conviction for attempted reentry in violation of § 1326, where the indictment failed to explicitly allege specific intent, without inquiring whether the omission prejudiced the defendant. *United States v. Pernillo-Fuentes*, 252 F.3d 1030 (9th Cir. 2001). We now hold that failure to allege any specific overt act that is a substantial step toward entry is a fatal defect in an indictment for attempted entry following deportation under 8 U.S.C. § 1326. Accordingly, we reverse the judgment against Resendiz and direct the district court to dismiss the indictment without prejudice to reindictment.

REVERSED and REMANDED.

REAVLEY, Circuit Judge, concurring:

I must concur because of this circuit's precedent, but I fail to see any other reason for this holding. An indictment is constitutionally sufficient if it clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense and so that a judgment thereon will safeguard him from a subsequent prosecution for the same offense. 1 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE CRIMINAL § 125 (3d ed. 2000 & Supp. 2005). This indictment does that.

The indictment informs us when and where the defendant intentionally tried to enter the country without consent. The indictment was sufficiently clear to enable Resendiz to prepare his defense. Resendiz raises no contention that he received inadequate notice of the crime charged, nor does he contend that he did not present false identification nor make inaccurate statements at the border, as government agents testified. His contention is only that the indictment failed to charge him with attempting to enter illegally because it does not contain a laundry list of the actions he took in doing so.

It is "inconceivable" that Resendiz would have presented a different defense if the indictment had been more detailed. *United States v. James*, 980 F.2d 1314, 1319 (9th Cir. 1992). Likewise, the indictment's reference to a specific date and place where Resendiz attempted to enter the United States is sufficient to allow him to claim double jeopardy if he is again charged with the same crime.

This circuit has incorporated the common law meaning of attempt into the crime of attempted illegal reentry under § 1326 and now requires the elements of that definition, including commission of an overt act, to be in the indictment. However, the legal definition of "attempt" does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him. *Hamling v. United States*, 418 U.S. 87, 118-19 (1974) (finding an obscenity indictment sufficient even though it followed statutory language and did not particularize the various elements required to constitute obscenity). As Professor Wright observed, and numerous courts have echoed, "[t]he test for sufficiency ought to be whether it is fair to defendant to require him or her to defend on the bases of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just suggested." WRIGHT & MILLER § 125.

The indictment charged Resendiz with "knowingly and intentionally" attempting to enter the country in violation of § 1326 and thus fairly implied that he committed an overt act in doing so. The judge directed the jury to convict Resendiz under §1326 only if it found beyond a reasonable doubt that he "intentionally committed an overt act that was a substantial step towards reentering the United States." Resendiz was adequately informed of his offense and no unfairness resulted from requiring him to defend on the basis of the charge as stated. The indictment should pass muster and would do so in other circuits. *See, e.g. United States v. Blackburn*, 9 F.3d 353

(5th Cir. 1993) (finding indictment for bank fraud sufficient, notwithstanding defendant's contention that it was fatally defective for failure to allege elements "knowingly" and "executes or attempts to execute," because indictment fairly imported all elements and included statutory section number).

While the panel faults the indictment for failure to include more detail, the test is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). Respectfully but boldly, I caution against the abandonment of common sense such as that illustrated in two cases that bedeviled the Texas courts for years. *See Northern v. State*, 203 S.W.2d 206 (Tex. Crim. App. 1947) (holding that an indictment charging that defendant killed the deceased by kicking and stomping her without charging that defendant stomped with his feet was fatally defective as failing to charge the means employed in commission of the offense) *implied overruling recognized by Vaughn v. State*, 607 S.W.2d 914 (Tex. Crim. App. 1980); *Gragg v. State*, 186 S.W.2d 243 (Tex. Crim. App. 1945) (holding that an indictment charging that defendant killed his wife by drowning her was defective as not alleging the manner and means used to accomplish the drowning).