(Slip Opinion) OCTOBER TERM, 2006 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* RESENDIZ-PONCE

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 05–998.   Argued October 10, 2006—Decided January 9, 2007

Respondent, a Mexican citizen, was charged with violating 8 U. S. C. §1326(a) by attempting to reenter the United States after having been deported.  The District Court denied his motion to have the indictment dismissed because it did not allege a specific overt act that he committed in seeking reentry.  In reversing, the Ninth Circuit reasoned that the indictment's omission of an overt act was a fatal flaw not subject to harmless-error review.

*Held:* Respondent's indictment was not defective, and, thus, this Court need not reach the harmless-error issue.  While the Government does not dispute that respondent cannot be guilty of attempted reentry under §1326(a) unless he committed an overt act qualifying as a substantial step toward completing his goal or that "[a]n indictment must set forth each element of the crime that it charges," *Almendarez-Torres* v. *United States*, 523 U. S. 224, 228, it contends that the instant indictment implicitly alleged that respondent engaged in the necessary overt act by alleging that he "attempted" to enter the country.  This Court agrees.  Not only does "attempt" as used in common parlance connote action rather than mere intent, but, more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements.  Thus, an indictment alleging attempted reentry under §1326(a) need not specifically allege a particular overt act or any other "component par[t]" of the offense.  See *Hamling* v. *United States*, 418 U. S. 87, 117.  It was enough for the indictment to point to the relevant criminal statute and allege that respondent "intentionally attempted to enter the United States . . . at or near San Louis . . . Arizona" "[o]n or about June 1, 2003."  App. 8.  An indictment has two constitutional requirements: "first, [it must] contai[n] the elements of the offense charged and fairly infor[m] a defendant of

Syllabus

the charge against which he must defend, and, second, [it must] enabl[e] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U. S., at 117. Here, the use of the word "attempt," coupled with the specification of the time and place of the alleged reentry, satisfied both. Respondent's argument that the indictment would have been sufficient only if it alleged any of three overt acts performed during his attempted reentry—that he walked into an inspection area; that he presented a misleading identification card; or that he lied to the inspector—is rejected. Respondent is correct that some crimes must be charged with greater specificity than an indictment parroting a federal criminal statute's language, see *Russell* v. *United States*, 369 U. S. 749, but the *Russell* Court's reasoning suggests that there was no infirmity in the present indictment, see *id.,* at 764, 762, and respondent's indictment complied with Federal Rule of Criminal Procedure 7(c)(1), which provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Pp. 5–9.

425 F. 3d 729, reversed and remanded.

STEVENS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, THOMAS, GINSBURG, BREYER, and ALITO, JJ., joined. SCALIA, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–998

UNITED STATES, PETITIONER *v.* JUAN RESENDIZ-PONCE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 9, 2007]

JUSTICE STEVENS delivered the opinion of the Court.

A jury convicted respondent Juan Resendiz-Ponce, a Mexican citizen, of illegally attempting to reenter the United States.  Because the indictment failed to allege a specific overt act that he committed in seeking reentry, the Court of Appeals set aside his conviction and remanded for dismissal of the indictment.  We granted the Government's petition for certiorari to answer the question whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error.

Although the Government expressly declined to "seek review of the court of appeals' threshold holdings that the commission of an overt act was an element of the offense of attempted unlawful reentry and that the indictment failed to allege that element," Pet. for Cert. 9, n. 3, "'[i]t is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case,'" *Ashwander* v. *TVA*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring) (quoting *Burton* v. *United States*, 196 U. S. 283, 295 (1905)).  For that reason, after

oral argument we ordered the parties to file supplemental briefs directed to the question whether respondent's indictment was in fact defective. We conclude that it was not and therefore reverse without reaching the harmless-error issue.

I

Respondent was deported twice, once in 1988 and again in 2002, before his attempted reentry on June 1, 2003. On that day, respondent walked up to a port of entry and displayed a photo identification of his cousin to the border agent. Respondent told the agent that he was a legal resident and that he was traveling to Calexico, California. Because he did not resemble his cousin, respondent was questioned, taken into custody, and ultimately charged with a violation of 8 U. S. C. §1326(a).[1] The indictment alleged:

> "On or about June 1, 2003, JUAN RESENDIZ-PONCE, an alien, knowingly and intentionally attempted to enter the United States of America at or

--------

[1] Title 8 U. S. C. §1326 provides, in part:

"Reentry of removed aliens

"(a) In general

   "Subject to subsection (b) of this section, any alien who—

   "(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

   "(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

"shall be fined under title 18, or imprisoned not more than 2 years, or both."

near San Luis in the District of Arizona, after having been previously denied admission, excluded, deported, and removed from the United States at or near Nogales, Arizona, on or about October 15, 2002, and not having obtained the express consent of the Secretary of the Department of Homeland Security to reapply for admission.

    "In violation of Title 8, United States Code, Sections 1326(a) and enhanced by (b)(2)."  App. 8.

Respondent moved to dismiss the indictment, contending that it "fail[ed] to allege an essential element, an overt act, or to state the essential facts of such overt act."  *Id.,* at 12. The District Court denied the motion and, after the jury found him guilty, sentenced respondent to a 63-month term of imprisonment.

The Ninth Circuit reversed, reasoning that an indictment's omission of "an essential element of the offense is a fatal flaw not subject to mere harmless error analysis." 425 F. 3d 729, 732 (2005).  In the court's view, respondent's indictment was fatally flawed because it nowhere alleged "any specific overt act that is a substantial step" toward the completion of the unlawful reentry.[2]  *Id.,* at 733.  The panel majority explained:

    "The defendant has a right to be apprised of what overt act the government will try to prove at trial, and

_____

   [2] In the opinion of the Ninth Circuit, the five elements of the offense of attempted reentry in violation of §1326(a) are:

"(1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) the defendant committed an overt act that was a substantial step towards reentering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry."  *United States* v. *Gracidas-Ulibarry*, 231 F. 3d 1188, 1196 (2000) (en banc).

he has a right to have a grand jury consider whether to charge that specific overt act. Physical crossing into a government inspection area is but one of a number of other acts that the government might have alleged as a substantial step toward entry into the United States. The indictment might have alleged the tendering a bogus identification card; it might have alleged successful clearance of the inspection area; or it might have alleged lying to an inspection officer with the purpose of being admitted. . . . A grand jury never passed on a specific overt act, and Resendiz was never given notice of what specific overt act would be proved at trial." *Ibid.*

Judge Reavley concurred, agreeing that Ninth Circuit precedent mandated reversal. If not bound by precedent, however, he would have found the indictment to be "constitutionally sufficient" because it clearly informed respondent "of the precise offense of which he [was] accused so that he [could] prepare his defense and so that a judgment thereon [would] safeguard him from a subsequent prosecution for the same offense." *Ibid.*

## II

At common law, the attempt to commit a crime was itself a crime if the perpetrator not only intended to commit the completed offense, but also performed "'some open deed tending to the execution of his intent.'" 2 W. LaFave, Substantive Criminal Law §11.2(a), p. 205 (2d ed. 2003) (quoting E. Coke, Third Institute 5 (6th ed. 1680)); see Keedy, Criminal Attempts at Common Law, 102 U. Pa. L. Rev. 464, 468 (1954) (noting that common-law attempt required "that some act must be done towards carrying out the intent"). More recently, the requisite "open deed" has been described as an "overt act" that constitutes a "substantial step" toward completing the offense. 2 LaFave, Substantive Criminal Law §11.4; see ALI, Model Penal

Code §5.01(1) (c) (1985) (defining "criminal attempt" to include "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime"); see also *Braxton* v. *United States*, 500 U. S. 344, 349 (1991) ("For Braxton to be guilty of an attempted killing under 18 U. S. C. §1114, he must have taken a substantial step towards that crime, and must also have had the requisite *mens rea*"). As was true at common law, the mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct.

The Government does not disagree with respondent's submission that he cannot be guilty of attempted reentry in violation of 8 U. S. C. §1326(a) unless he committed an overt act qualifying as a substantial step toward completion of his goal. See Supplemental Brief for United States 7–8. Nor does it dispute that "[a]n indictment must set forth each element of the crime that it charges." *Almendarez-Torres* v. *United States*, 523 U. S. 224, 228 (1998). It instead contends that the indictment at bar implicitly alleged that respondent engaged in the necessary overt act "simply by alleging that he 'attempted to enter the United States.'" Supplemental Brief for United States 8. We agree.

Not only does the word "attempt" as used in common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements. Consequently, an indictment alleging attempted illegal reentry under §1326(a) need not specifically allege a particular overt act or any other "component par[t]" of the offense. See *Hamling* v. *United States*, 418 U. S. 87, 119 (1974). Just as it was enough for the indictment in *Hamling* to allege that the defendant mailed "obscene" material in violation of 18 U. S. C. §1461, see 418 U. S., at 117–118, it was enough for the indictment in this case to point to the

relevant criminal statute and allege that "[o]n or about June 1, 2003," respondent "attempted to enter the United States of America at or near San Luis in the District of Arizona."[3]  App. 8.

In *Hamling*, we identified two constitutional requirements for an indictment: "first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." 418 U. S., at 117.  In this case, the use of the word "attempt," coupled with the specification of the time and place of respondent's attempted illegal reentry, satisfied both.  Indeed, the time-and-place information provided respondent with more adequate notice than would an indictment describing particular overt acts.  After all, a given defendant may have approached the border or lied to a border-patrol agent in the course of countless attempts on innumerable occasions.  For the same reason, the time-and-date specification in respondent's indictment provided ample protection against the risk of multiple prosecutions for the same crime.[4]

───────────

[3] See United States v. Toma, No. 94–CR–333, 1995 WL 65031, *1 (ND Ill. 1995) ("[F]or indictment purposes, use of the word 'attempt' is sufficient to incorporate the substantial step element.  The word 'attempt' necessarily means taking a substantial step" (footnote omitted)).

[4] There is little practical difference between our holding and JUSTICE SCALIA's position.  Apparently, JUSTICE SCALIA would have found the indictment to be sufficient if it also stated that respondent "'took a substantial step'" toward entering the United States.  See *post,* at 6 (dissenting opinion).  Unlike the Ninth Circuit, then, JUSTICE SCALIA would not have required the indictment to allege a particular overt act such as tendering a false identification to a border inspector.  Compare *ibid.* with *Resendiz-Ponce*, 425 F. 3d at 729, 733.  With all due respect to his principled position, we think that the "substantial step" requirement is implicit in the word "attempt," and we do not believe that adding those four words would have given respondent any greater

Respondent nonetheless maintains that the indictment would have been sufficient only if it had alleged any of three overt acts performed during his attempted reentry: that he walked into an inspection area; that he presented a misleading identification card; or that he lied to the inspector. See Supplemental Brief for Respondent 7. Individually and cumulatively, those acts tend to prove the charged attempt—but none was essential to the finding of guilt in this case. All three acts were rather part of a single course of conduct culminating in the charged "attempt." As Justice Holmes explained in *Swift & Co.* v. *United States*, 196 U. S. 375, 396 (1905), "[t]he unity of the plan embraces all the parts."[5]

Respondent is of course correct that while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity. See *Hamling,* 418 U. S., at 117. A clear example is the statute making it a crime for a witness summoned before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U. S. C. §192. As we explained at length in our opinion in *Russell* v. *United States*, 369 U. S. 749 (1962), a valid indictment for such a refusal to testify must go beyond the words of §192 and allege the subject of the congressional hearing in order to determine whether the defendant's refusal was "pertinent." Based on a number of cases arising out of congressional investigations, we recognized that the relevant hearing's subject was fre-

———————

notice of the charges against him or protection against future prosecution.

[5] Likewise, it would it be unrealistic to suggest that respondent actually committed three separate attempt offenses involving three different overt acts. Indeed, if each overt act were treated as a separate element, an attempt involving multiple overt acts might conceivably qualify for several separate offenses, thus perversely enhancing, rather than avoiding, the risk of successive prosecution for the same wrong.

quently uncertain but invariably "central to every prosecution under the statute." *Id.,* at 764. Both to provide fair notice to defendants and to assure that any conviction would arise out of the theory of guilt presented to the grand jury, we held that indictments under §192 must do more than restate the language of the statute.

Our reasoning in *Russell* suggests that there was no infirmity in the present indictment. First, unlike the statute at issue in *Russell,* guilt under 8 U. S. C. §1326(a) does not "depen[d] so crucially upon such a specific identification of fact." 369 U. S., at 764. Second, before explaining the special need for particularity in charges brought under 2 U. S. C. §192, Justice Stewart noted that, in 1872, Congress had enacted a statute reflecting "the drift of the law away from the rules of technical and formalized pleading which had characterized an earlier era."[6] 369 U. S., at 762. After the repeal of that statute, there was no other legislation dealing generally with the subject of indictments until the promulgation of Federal Rule of Criminal Procedure 7(c)(1). As we have said, the Federal Rules "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." *United States* v. *Debrow*, 346 U. S. 374, 376 (1953). While detailed allegations might well have been required under common-law pleading rules, see, *e.g., Commonwealth* v. *Peaslee,* 177 Mass. 267, 59 N. E. 55 (1901), they surely are not contemplated by Rule 7(c)(1), which provides that an indictment "shall be a plain, con-

_____

[6] The 1872 statute provided that "no indictment found and presented by a grand jury in any district or circuit . . . shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." §8, 17 Stat. 198. The opinion in *Russell* noted that the 1872 statute had been repealed, but its substance had been preserved in Federal Rule of Criminal Procedure 52(a). See 369 U. S., at 762.

cise, and definite written statement of the essential facts constituting the offense charged."[7]

Because we are satisfied that respondent's indictment fully complied with that Rule and did not deprive him of any significant protection that the constitutional guarantee of a grand jury was intended to confer, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

---

[7] Federal Rule of Criminal Procedure 31(c) is also instructive. It provides that a defendant may be found guilty of "an attempt to commit the offense charged; or . . . an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." Fed. Rule Crim. Proc. 31(c)(2)–(3). If a defendant indicted only for a completed offense can be convicted of attempt under Rule 31(c) without the indictment ever mentioning an overt act, it would be illogical to dismiss an indictment charging "attempt" because it fails to allege such an act.

# SUPREME COURT OF THE UNITED STATES

No. 05–998

## UNITED STATES, PETITIONER *v.* JUAN RESENDIZ-PONCE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 9, 2007]

JUSTICE SCALIA, dissenting.

It is well established that an indictment must allege all
the elements of the charged crime. *Almendarez-Torres* v.
*United States*, 523 U. S. 224, 228 (1998); *United States* v.
*Cook*, 17 Wall. 168, 174 (1872). As the Court acknowl-
edges, it is likewise well established that "attempt" con-
tains two substantive elements: the *intent* to commit the
underlying crime, and the undertaking of *some action*
toward commission of that crime. See *ante*, at 4 (citing 2
W. LaFave, Substantive Criminal Law §11.2(a), p. 205 (2d
ed. 2003), E. Coke, Third Institute 5 (6th ed. 1680), and
Keedy, Criminal Attempts at Common Law, 102 U. Pa.
L. Rev. 464, 468 (1954)). See also *Braxton* v. *United
States*, 500 U. S. 344, 349 (1991). It should follow, then,
that when the Government indicts for attempt to commit a
crime, it must allege both that the defendant had the
intent to commit the crime, *and* that he took some action
toward its commission. Any rule to the contrary would be
an exception to the standard practice.

The Court gives two reasons for its special "attempt"
exception. First, it says that in "common parlance" the
word attempt "connote[s]," and therefore "impli[es]," both
the intent and overt-act elements. *Ante*, at 5. This strikes
me as certainly irrelevant, and probably incorrect to boot.
It is irrelevant because, as I have just discussed, we have

always required the elements of a crime to be explicitly set forth in the indictment, *whether or not* they are fairly called to mind by the mere name of the crime. Burglary, for example, connotes in common parlance the entry of a building with felonious intent, yet we require those elements to be set forth. Our precedents make clear that the indictment must "fully, directly, and *expressly*, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States* v. *Carll*, 105 U. S. 611, 612 (1882) (emphasis added). And the Court's argument is probably incorrect because I doubt that the common meaning of the word "attempt" conveys with precision what conviction of that crime requires. A reasonable grand juror, relying on nothing but that term, might well believe that it connotes intent plus any minor action toward the commission of the crime, rather than the "'substantial step'" that the Court acknowledges is required, *ante*, at 5.

Besides appealing to "common parlance," the Court relies on the fact that attempt, "as used in the law for centuries . . . encompasses both the overt act and intent elements." *Ante*, at 6. Once again, this argument seems to me certainly irrelevant and probably incorrect. Many common-law crimes have retained relatively static elements throughout history, burglary among them; that has never been thought to excuse the specification of those elements in the indictment. And the argument is probably incorrect, because the definition of attempt has not been nearly as consistent as the Court suggests. Nearly a century ago, a leading criminal-law treatise pointed out that "'attempt' is a term peculiarly indefinite" with "no prescribed legal meaning." 1 F. Wharton, Criminal Law §229, p. 298 (11th ed. 1912). Even the modern treatise the Court relies upon, see *ante,* at 4, explains—in a subsection entitled "The Confusion"—that jurisdictions vary widely in how they define the requisite actus reus. LaFave, *supra*,

§11.4(a), at 218–219. Among the variations are: "'an act toward the commission of' some offense"; "an act 'in furtherance of'" an offense; "'a substantial step toward the commission of the crime'"; "'some appreciable fragment of the crime'"; and the wonderfully opaque "'commencement of the consummation.'" *Id.*, §11.4(a), at 218–219 (footnote omitted). These are not simply different ways of saying "substantial step." The Model Penal Code definition that the Court invokes, *ante*, at 4–5, is just that: a model. It does not establish the degree of homogeneity that the Court asserts. The contention that the "federal system" has a "well-settled" definition of attempt, see Supplemental Brief for United States 22, tells us nothing; many terms in federal indictments have only one *federal* definition, not because that is the universally accepted definition, but because there is only one Federal Government.

In this case, the indictment alleged that respondent "knowingly and intentionally attempted to enter the United States of America," App. 8, so that the Court focuses only on whether the indictment needed to allege the second element of attempt, an overt act. If one accepts the Court's opinion, however, the indictment could just as well have omitted the phrase "knowingly and intentionally," since that is understood in "common parlance," and has been an element of attempt "for centuries." Would we say that, in a prosecution for first-degree murder, the element of "malice aforethought" could be omitted from the indictment simply because it is commonly understood, and the law has always required it? Surely not.

The sole judicial authority the Court cites for its novel exception to the traditional indictment requirements (other than an unpublished opinion of a district court, see *ante*, at 6, n. 3) is *Hamling* v. *United States*, 418 U. S. 87 (1974). The relevant portion of that opinion consists of the following:

"The definition of obscenity . . . is not a question of fact, but one of law; the word 'obscene,' . . . is not merely a generic or descriptive term, but a legal term of art. The legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him. Since the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish its sufficiency, the indictment in this case was sufficient to adequately inform petitioners of the charges against them." *Id.*, at 118–119 (citations omitted).

If these sentences established the broad principle the Court asserts, they would apply not only to the elements of attempt, but to the elements of all crimes, effecting a revolution in our jurisprudence regarding the requirements of an indictment. In fact, however, *Hamling* is easily distinguishable. "Obscenity" is, to be sure, one of the elements of the crime of publishing obscenity. But the "various component parts of the constitutional definition of obscenity" are no more *elements* of the crime of publishing obscenity than the various component parts of the definition of "building" are elements of the crime of burglary. To be sure, those definitions must be met for conviction; but they need not be set forth in the indictment. If every word contained within the definition of each element of a crime were *itself* an element of the crime within the meaning of the indictment requirement, there would be no end to the prolixity of indictments. There is no dispute here that "intent" and "substantial step" are elements of the federal crime of attempt, just as obscenity was an element of the crime charged in *Hamling*. *Hamling* would be in point if it dispensed with the charging of obscenity in the indictment.

The Court finds another point "instructive": "If a defen-

dant indicted only for a completed offense can be convicted of attempt . . . without the indictment's ever mentioning an overt act, it would be illogical to dismiss an indictment charging 'attempt' because it fails to allege such an act." *Ante*, at 9, n. 7. I disagree; it seems to me entirely logical. To indict for commission of a *completed offense*, the prosecutor must persuade the grand jury that the accused's acts and state of mind fulfilled all the elements of the offense. If they did so, and if the offense has a *mens rea* element (which almost all crimes, including burglary, do), then they unquestionably fulfilled all the elements of an attempt as well—*i.e.*, the accused meant to commit the crime and took the requisite step (no matter how demanding the requirement) in that direction. That is to say, attempt to commit a crime is simply a lesser included offense. A grand-jury finding that the accused committed the crime is *necessarily* a finding that he attempted to commit the crime, and therefore the attempt need not be separately charged. When, however, the prosecutor seeks only an indictment for attempt, it is not enough to tell the grand jury that it requires a finding of "some, but not all, of the elements of the substantive crime"; he must specify what the elements of attempt consist of. He must do that for the same reason a court must *instruct* the petit jury on the attempt elements, see 2 E. Devitt, C. Blackmar, & K. O'Malley, Federal Jury Practice and Instructions §21.03, p. 4, Notes (4th ed. 1990) (collecting cases), even when the indictment has not separately *charged* attempt: without such specification, the jury, grand or petit, cannot intelligently find attempt.

Finally, the Court suggests that there is something different about attempt because it is a parasitic crime. There is no such crime as bald attempt; it must be attempt *to commit some other crime.* This is unquestionably true, fully as true as the fact that attempt begins with an "a." But there is no reason why the one, any more than the

other, has anything to do with the purposes, and hence the substance, of the indictment requirement. Conspiracy is also, in most cases, a parasitic crime, and no one contends that its elements need not be charged.

Despite the clear answer provided by straightforward application of the oft-recited principles of our jurisprudence, I might have been persuaded to recognize an (illogical) exception to those principles if the Government had demonstrated that mere recitation of the word "attempt" in attempt indictments has been the traditional practice. But its effort to do so falls far short; in fact, it has not even undertaken such an effort. The Government has pointed to some cases that allow an indictment simply to use the word "attempt," and many others that invalidate an indictment for failure to allege an overt act. See Supplemental Brief for United States 15–21. It matters not whether more of one sort or the other of these cases arose in state courts or federal courts; the point is that there is no established historical "attempt" exception to the general principles of our jurisprudence. That being so, those principles must prevail.

To be clear, I need not decide in this case whether, as the Ninth Circuit held, the Government was required to specify in the indictment which particular overt act it would be relying on at trial. Cf. *Russell* v. *United States*, 369 U. S. 749 (1962). It suffices to support the judgment, that the Government *was* required to state not only that Resendiz-Ponce "knowingly and intentionally attempted to enter the United States of America," but also that he "took a substantial step" toward that end.

\*    \*    \*

My dissenting view that the indictment was faulty (a point on which we requested supplemental briefing) puts me in the odd position of being the sole Justice who must decide the question on which we granted certiorari:

whether a constitutionally deficient indictment is structural error, as the Ninth Circuit held, or rather is amenable to harmless-error analysis. I cannot vote to affirm or to reverse the judgment without resolving that issue. Since the full Court will undoubtedly have to speak to the point on another day (it dodged the bullet today by inviting and deciding a *different* constitutional issue—albeit, to be fair, a narrower one) there is little use in my setting forth my views in detail. It should come as no surprise, given my opinions in *United States* v. *Gonzalez-Lopez*, 548 U. S. \_\_\_ (2006), and *Neder* v. *United States*, 527 U. S. 1, 30 (1999) (opinion concurring in part and dissenting in part), that I would find the error to be structural. I would therefore affirm the judgment of the Ninth Circuit.